## Cooperative Fire Insurance Association of Vermont v. White Caps, Inc., City of Burlington and David Stancil

[694 A.2d 34]

No. 96-258

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 28, 1997

Motion for Reargument Denied April 16, 1997

356

*Richard P. Foote* of *Conley & Foote,* Middlebury, for Plaintiff-Appellant.

*John T. Leddy* of *McNeil, Leddy & Sheahan,* Burlington, for Defendant-Appellee City of Burlington.

*John L. Kellner* and *Kevin E. Brown* of *Langrock Sperry & Wool,* Middlebury, for Intervenor-Appellee Stancil.

**Morse, J.** Traditionally, an insurer was released from its contractual obligations if its insured committed an unexcused breach of the prompt-notice provisions of the policy, regardless of whether the insurer was prejudiced by the delay. Past decisions of this Court have adhered to this rule when the policy plainly makes notice a condition precedent to coverage. See *Nelson v. Travelers Ins. Co.,* 113 Vt. 86, 98, 30 A.2d 75, 82 (1943); *Houran v. Preferred Accident Ins. Co.,* 109 Vt. 258, 272-74, 195 A. 253, 259-60 (1938). During the past several decades, however, the traditional view has been largely supplanted, and a majority of jurisdictions now apply the rule that an insurer must prove it was prejudiced from the delay before it may be relieved of its duties. See generally Annotation, *Modern Status of Rules Requiring Liability Insurer to Show Prejudice to Escape Liability Because of Insured's Failure or Delay in Giving Notice of Accident or Claim, or in Forwarding Suit Papers,* 32 A.L.R.4th 141, 157-59 (1984) (collecting cases). Although this Court has recognized the recent trend of decisions, see *Putney School, Inc. v. Schaaf,* 157 Vt. 396, 405, 599 A.2d 322, 327 (1991), it has not heretofore had occasion to reexamine its earlier holdings. But cf. *Dumont v. Knapp,* 131 Vt. 342, 349-50, 306 A.2d 105, 109-10 (1973) (Barney, J., concurring) (urging a "reexamination of the holdings of *Houran v. Preferred Accident Insurance Co.* . . . and *Nelson v. Travelers Insurance Co.*").

The time has come for Vermont to consider whether the more modern view represents the better rule. We conclude that it does. Accordingly, we hold that an insurer which seeks to be relieved of its obligations under a liability insurance policy on the ground that the notice provision was breached must prove that the breach resulted in substantial prejudice to its position in the underlying action. It follows that the judgment in this case, declaring that the insurer had a continuing duty to defend and indemnify its insureds, must be affirmed.

## I. FACTS

The material facts are undisputed. In July 1992, intervenor-defendant David Stancil slipped and fell outside of the White Caps Restaurant at the Burlington Boathouse complex. The restaurant, owned and operated by defendant White Caps, Inc., leased a portion of the Boathouse from defendant City of Burlington, and under its lease was required to make the City an additional insured under its liability policy. Two months after the incident, Stancil's attorney sent a claim letter to White Caps (with a copy to the City), which alleged that the accident was caused by "grease-ladened waste water" from the restaurant. Counsel requested that both White Caps and the City refer the claim to their insurance carriers and have them contact his office. Although the letter was sent in September 1992, defendants' insurer, Cooperative Fire Insurance Association of Vermont, did not receive notice of the claim until eighteen months later, in April 1994. Defendants offered no excuse or justification for the delay.

Under a section entitled "Commercial General Liability Conditions," the Cooperative policy required that its insureds provide "prompt written notice" of any claim or suit, and "[i]mmediately send . . . copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'" The "Conditions" section further stated that no suit for coverage could be brought on the policy "unless all of its terms have been fully complied with."

Based on defendants' failure to provide prompt and immediate notice of Stancil's claim, Cooperative filed this action in the Addison Superior Court seeking a declaration that its duties to defend and indemnify under the policy had been forfeited. Stancil successfully moved to intervene as a party defendant in the action, and then moved for summary judgment. Stancil advanced two arguments in support of the motion: (1) the policy failed expressly to make prompt notice a condition precedent to coverage, and therefore Cooperative remained bound by the contract unless it could demonstrate prejudice from the delay; and (2) even if the policy allowed Cooperative to forfeit coverage for the late notice, it must still prove that its position had been prejudiced thereby. Stancil urged the court, in this regard, to reexamine *Houran* and its progeny and reject the rule of automatic forfeiture in favor of one requiring the insurer to establish prejudice in all cases.

The trial court ruled in favor of Stancil on the first point, finding that the policy language did not clearly and unambiguously make prompt notice a condition precedent to coverage, and therefore

breach of the notice clause did not release Cooperative from its duties absent a showing of prejudice. Its narrow reading of the policy language relieved the court of the need to consider the continued viability of *Houran*. The court further concluded that Cooperative had failed to adduce any evidence that its position in the underlying action had been prejudiced by the delay. Accordingly, the court entered summary judgment for defendants, declaring that Cooperative's duty to defend and indemnify in the underlying action remained in force. This appeal followed.

## II. DISCUSSION

Nearly sixty years ago, this Court held in *Houran* that an insured's unexcused breach of a policy provision making prompt notice a condition precedent to coverage relieved the insurer of its obligations under the policy, without regard to whether it was prejudiced by the late notice. As the Court explained:

> The rule established by the weight of authority is that where, by the terms of the insurance contract, a specified notice of accident, given by or on behalf of the insured to the insurer, is made a condition precedent to liability on the part of the latter, the failure to do so will release the insurer from the obligations imposed by the contract, although no prejudice may have resulted.

109 Vt. at 272, 195 A. at 259. To constitute a condition precedent, the Court further explained, "a specific forfeiture clause is unnecessary . . . . It is enough if the policy provides that liability thereunder is 'subject to the following conditions.'" *Id.* at 273-74, 195 A. at 260 (quoting *Hoffman v. Employer's Liability Assur. Corp.*, 29 P.2d 557, 560, 562 (Or. 1934)). Decisions subsequent to *Houran* have reaffirmed the rule that "notice is of the essence of the insurance contract and failure to comply with it . . . voids any liability of the company under the policy." *Nelson*, 113 Vt. at 98, 30 A.2d at 82; see also *Ziman v. Employers Fire Ins. Co.*, 493 F.2d 196, 199 (2d Cir. 1974) ("[T]he *Houran* decision . . . establishes [that] no showing whatsoever of material harm or prejudice to the insurer was required."); *Boyer v. American Casualty Co.*, 332 F.2d 708, 710-11 (2d Cir. 1964) (applying *Houran* to hold that breach of prompt notice provision voided policy); *Town of Windsor v. Hartford Accident & Indem. Co.*, 885 F. Supp. 666, 670 (D. Vt. 1995) ("In Vermont, compliance with the notice provision of an insurance contract is a condition precedent to establishing the liability of the insurer under the policy.").

The trial court here attempted to distinguish this line of authority on the ground that the Cooperative policy language was "substantially different" from the policy language in *Houran* and subsequent decisions. Although the trial court's approach is understandable, given the rather drastic consequence of a total forfeiture of coverage, the effort to distinguish *Houran* is unpersuasive. A comparison of the Cooperative policy with the policies in *Houran* and other cases reveals no meaningful differences. See *Nelson*, 113 Vt. at 98, 30 A.2d at 82 ("notice shall be given . . . as soon as practicable" upon occurrence of accident); *Houran*, 109 Vt. at 263, 195 A. at 254 (policy agreement "subject to the following conditions," including "[n]otice of accident . . . as soon as is reasonably possible"); *Ziman*, 493 F.2d at 198 n.4 ("In the event of an occurrence, written notice . . . shall be given . . . as soon as practicable."); *Boyer*, 332 F.2d at 710 n.1 ("Condition[] 9. . . . When an accident or occurrence takes place, written notice shall be given . . . as soon as practicable"); *Town of Windsor*, 885 F. Supp. at 670 n.5 (notice must be provided immediately after claim was made or suit was brought). Indeed, if anything the Cooperative policy is even stronger, expressly prohibiting any suit for coverage under the policy "unless *all* of its terms have been fully complied with." (Emphasis added).

The fundamental question as to the continuing viability of *Houran* cannot therefore be avoided. For several reasons, all of which have been utilized in varying degrees by the many courts rejecting the traditional rule, we conclude that a failure to provide prompt notice should not automatically defeat liability insurance coverage regardless of circumstances.[1] Insurance law in Vermont, as in most other states, has evolved substantially from the strict contractual approach

---

[1] As noted, a significant number of cases in other jurisdictions have held that an insurer must demonstrate prejudice from a late notice in order to escape liability. See *Weaver Bros., Inc. v. Chappel*, 684 P.2d 123, 125 (Alaska 1984); *Lindus v. Northern Ins. Co.*, 438 P.2d 311, 315 (Ariz. 1968); *Campbell v. Allstate Ins. Co.*, 384 P.2d 155, 156 (Cal. 1963); *Aetna Casualty & Surety Co. v. Murphy*, 538 A.2d 219, 223-24 (Conn. 1988); *State Farm Mut. Auto. Ins. Co. v. Johnson*, 320 A.2d 345, 347 (Del. 1974); *Jones v. Bituminous Casualty Corp.*, 821 S.W.2d 798, 802-03 (Ky. 1991); *Barnes v Lumbermen's Mut. Casualty Co.*, 308 So. 2d 326, 328 (La. Ct. App. 1975); *Ouellette v. Maine Bonding & Casualty Co.*, 495 A.2d 1232, 1234-35 (Me. 1985); *General Accident Ins. Co. v. Scott*, 669 A.2d 773, 778 (Md. Ct. Spec. App. 1996); *Johnson Controls, Inc. v. Bowes*, 409 N.E.2d 185, 188 (Mass. 1980); *Wendel v. Swanberg*, 185 N.W.2d 348, 353 (Mich. 1971); *Reliance Ins. Co. v. St. Paul Ins. Cos.*, 239 N.W.2d 922, 925 (Minn. 1976); *MFA Mutual Ins. Co. v. Sailors*, 141 N.W.2d 846, 849 (Neb. 1966); *Cooper v. Government Employees Ins. Co.*, 237 A.2d 870, 873-74 (N.J. 1968); *Foundation Reserve Ins. Co. v. Esquibel*, 607 P.2d 1150, 1152 (N.M. 1980); *Great American Ins. Co. v. C.G. Tate Const.*, 279 S.E.2d

reflected in the rule that courts should not interfere with the parties' presumed freedom to draft whatever agreement they desire. This notion unmistakably informed the opinion in *Houran*, which applied a straightforward contractual analysis to hold that the notice clause plainly made time of the essence, "was a term of the contract by which the insured and the plaintiff[] . . . were bound, and, in the absence of compliance therewith, a recovery [wa]s barred." 109 Vt. at 274, 195 A. at 260.

■ Today it is widely recognized that an insurance contract is generally *not* a freely negotiated agreement; its terms and conditions are generally dictated by the insurer, and provisions such as the notice clause at issue here are standard terms on which the insured has no effective input. Hence, we routinely construe insurance policies in favor of the insured, and in accord with the reasonable expectations of the purchaser. See *Putney School*, 157 Vt. at 405, 599 A.2d at 327; *Stonewall Ins. Co. v. Moorby*, 130 Vt. 562, 566-67, 298 A.2d 826, 829 (1972). While recognizing that an insurance policy may reasonably require the insured to promptly notify the company in the event of a claim or suit, imposing a forfeiture of coverage for a violation of this requirement "falls beyond the reasonable expectations of the ordinary insurance consumer." *Jones v. Bituminous Casualty Corp.*, 821 S.W.2d 798, 802 (Ky. 1991).

In *Cooper v. Government Employees Insurance Co.*, 237 A.2d 870 (N.J. 1968), Chief Justice Weintraub, speaking for the New Jersey Supreme Court, cogently explained the need for a balancing of interests in this area, weighing the *purpose* of the prompt notice clause against the contractual *penalty* for its breach:

> [A]lthough the policy may speak of the notice provision in terms of "condition precedent," . . . nonetheless what is involved is a forfeiture, for the carrier seeks, on account of

769, 775 (N.C. 1981); *Finstad v. Steiger Tractor, Inc.*, 301 N.W.2d 392, 398 (N.D. 1981); *Independent Sch. Dist. No. 1 v. Jackson*, 608 P.2d 1153, 1155 (Okla. 1980); *Lusch v. Aetna Casualty & Surety Co.*, 538 P.2d 902, 904 (Or. 1975); *Brakeman v. Potomac Ins. Co.*, 371 A.2d 193, 198 (Pa. 1977); *Pennsylvania Gen. Ins. Co. v. Becton*, 475 A.2d 1032, 1035 (R.I. 1984); *Factory Mut. Liab. Ins. Co. v. Kennedy*, 182 S.E.2d 727, 729-30 (S.C. 1971); *Pulse v. Northwest Farm Bureau Ins. Co.*, 566 P.2d 577, 579 (Wash. Ct. App. 1977); *State Auto. Mut. Ins. Co. v. Youler*, 396 S.E.2d 737, 744 (W. Va. 1990); *Dietz v. Hardware Dealers Mut. Fire Ins. Co.*, 276 N.W.2d 808, 812 (Wis. 1979).

Some jurisdictions, however, continue to enforce prompt notice provisions strictly. See *State Farm Mut. Auto. Ins. Co. v. Burgess*, 474 So. 2d 634, 636 (Ala. 1985); *Marez v. Dairyland Ins. Co.*, 638 P.2d 286, 290 (Colo. 1981); *State Farm Mut. Auto. Ins. Co. v. Porter*, 272 S.E.2d 196, 199 (Va. 1980).

a breach of that provision, to deny the insured the very thing paid for. This is not to belittle the need for notice of an accident, but rather to put the subject in perspective. Thus viewed, it becomes unreasonable to read the provision unrealistically, or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach. To do so would be unfair to insureds.

*Id.* at 873-74; accord *Jones,* 821 S.W.2d at 802-03; *Johnson Controls, Inc. v. Bowes,* 409 N.E.2d 185, 187 (Mass. 1980); *Brakeman v. Potomac Ins. Co.,* 371 A.2d 193, 196 (Pa. 1977). Writing nearly a quarter century ago, Justice Barney of this Court echoed the call for a reasonable balance, in which the penalty for a late notice of claim would not be allowed to "outrun" its consequences:

At the very least, it would seem that the measure of loss of insurance coverage ought not to outrun the demonstrated prejudice to the insurer, rather than leaving it as an all or nothing proposition as it now is. The present penalty now so far outreaches the purposes of the provision as to leave insureds subject to the withdrawal of protection for trivial reasons. This is an invidious kind of forfeiture that can be damaging to both an unwary insured and an innocent injured.

*Dumont,* 131 Vt. at 350, 306 A.2d at 110 (Barney, J., concurring); see also *Aetna Casualty & Surety Co. v. Murphy,* 538 A.2d 219, 223 (Conn. 1988) ("[A] proper balance between the interests of the insurer and the insured requires a factual inquiry into whether . . . an insurer has been prejudiced by its insured's delay in giving notice . . . .").

The purpose of a policy provision requiring notice of an accident, claim, or suit "is to allow the insurer to form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, and to prevent fraud and imposition upon it." *Stonewall,* 130 Vt. at 567, 298 A.2d at 829. Prompt notice enables an insurance company to make a "seasonable investigation of the facts relating to liability," *Bayer & Mingolla Constr. Co. v. Deschenes,* 205 N.E.2d 208, 212 (Mass. 1965), and thus

protects the insurance company from fraudulent claims, as well as invalid claims made in good faith, by allowing the

> insurance company to gain early control of the proceedings. . . .
>
> [A] reasonable notice clause is designed to protect the insurance company from being placed in a substantially less favorable position than it would have been in had timely notice been provided . . . . In short, the function of a notice requirement is to protect the insurance company's interests from being *prejudiced.*

*Brakeman,* 371 A.2d at 197 (emphasis added).

It follows that in cases where a late notice does not harm the insurer's interests, the reason for the notice clause has not been undermined. A strict forfeiture of coverage in these circumstances would thus "outreach[] the purposes of the provision" and constitute "an invidious . . . forfeiture . . . damaging to both an unwary insured and an innocent injured." *Dumont,* 131 Vt. at 350, 306 A.2d at 110 (Barney, J., concurring). Properly understood and applied, the notice clause should not function as "a technical escape-hatch by which to deny coverage in the absence of prejudice," *Miller v. Marcantel,* 221 So. 2d 557, 559 (La. Ct. App. 1969), but rather as an early warning mechanism to benefit both insurer and insured.

We conclude, therefore, that the modern rule represents the better reasoned approach. The contract of insurance "not being a truly consensual arrangement," *Cooper,* 237 A.2d at 874, and the penalty being a matter of forfeiture, we think it appropriate to abandon the strict contract analysis of *Houran.* We hold, instead, that an insurer may not forfeit its insured's protection unless it demonstrates that the notice provision was breached, and that it "suffered substantial prejudice from the delay in notice." *Jones,* 821 S.W.2d at 803. This is consistent not only with the modern trend among jurisdictions, see Annotation, *supra,* 32 A.L.R.4th at 145, but also with the current Vermont rule governing an insured's breach of the standard covenant of cooperation. See *American Fidelity Co. v. Kerr,* 138 Vt. 359, 362, 416 A.2d 163, 165 (1980) (insurer "has the burden to show the lack of cooperation of its insured . . . and the actual prejudice resulting therefrom"). Apart from the practical difficulty of requiring the insured to prove a negative (the *absence* of prejudice), the carrier is in a "far superior position to be knowledgeable about the facts which establish whether prejudice exists." *Jones,* 821 S.W.2d at 803; see also *Weaver Bros., Inc. v. Chappel,* 684 P.2d 123, 126 (Alaska 1984) ("Information regarding prejudice is generally more readily available to the insurer than the insured."); *Lindus v. Northern Ins. Co.,* 438 P.2d 311, 315 (Ariz. 1968) ("[T]he burden of proving prejudice is on the

insurance company."); *Campbell v. Allstate Ins. Co.*, 384 P.2d 155, 157 (Cal. 1963) ("Although it may be difficult for an insurer to prove prejudice in some situations, it ordinarily would be at least as difficult for the injured person to prove a lack of prejudice, which involves proof of a negative."); *State Farm Mut. Auto. Ins. Co. v. Johnson*, 320 A.2d 345, 347 n.3 (Del. 1974) ("It seems both more practicable and more equitable to require the insurer to establish prejudice."); *Brakeman*, 371 A.2d at 198 ("[I]t is more equitable to place the burden of showing prejudice on the insurance company.").[2]

Although the existence of prejudice to an insurer from a delayed notice is generally considered a question for the trier of fact, *Jones*, 821 S.W.2d at 803; *Ouellette v. Maine Bonding & Casualty Co.*, 495 A.2d 1232, 1235 (Me. 1985), the trial court granted summary judgment for defendants on the ground that Cooperative had failed to adduce any evidence that its position in defending the underlying claim had been prejudiced by the delay. See *Jones*, 821 S.W.2d at 803 ("The issue [of prejudice] is ripe for summary judgment . . . where the proof is conclusive, or there has been a failure of proof, on this subject."). The evidence offered by Cooperative in this regard consisted of the deposition testimony of White Caps' two principals, John Rock and Christina Czechut. Rock testified that he had no knowledge of the condition of the walkway outside the restaurant and knew of no one who might have greater knowledge other than Ms. Czechut. In her letter to Cooperative's agent in April 1994 (some eighteen months after the incident), Czechut had described the events following the accident in some detail. In her deposition testimony, she stated that she had not personally witnessed the accident and could not recall who told her about it.

Cooperative claims that the inability of either Czechut or Rock to provide further details demonstrates that the eighteen-month delay hindered its ability to investigate and defend the underlying claim, and specifically impeded its ability to take timely statements from other possible witnesses. Cooperative did not assert, however, that it had made any investigative effort to identify potential witnesses to the accident, that any particular witness was unavailable or had

---

[2] We are not presented here with the question whether the rule should be different when the case involves a "claims made" policy, as some courts have held, and therefore express no opinion on this subject. See *Esmailzadeh v. Johnson & Speakman*, 869 F.2d 422, 424 (8th Cir. 1989); *Continental Casualty Co. v. Maxwell*, 799 S.W.2d 882, 887 (Mo. Ct. App. 1990); *Zuckerman v. National Union Fire Ins. Co.*, 495 A.2d 395, 406 (N.J. 1985).

suffered memory loss, that any evidence had been lost or was unavailable, or that it had actually made any significant investigation of the incident following notice of the claim. As the trial court noted, Czechut's letter to Cooperative's agent had provided a fair amount of detail concerning the incident, yet Cooperative offered no evidence that it had attempted to follow up any of the information provided.

"An insurer cannot assert prejudice with regard to its ability to conduct an investigation that it never even tried to conduct." *General Accident Ins. Co. v. Scott*, 669 A.2d 773, 780 (Md. Ct. Spec. App. 1996); see also *Country Mut. Ins. Co. v. Kuzmickas*, 276 N.E.2d 357, 360 (Ill. App. Ct. 1971) (insurer could not claim prejudice from late notice of claim where there was no evidence it had conducted any investigation after receiving notice). As the trial court here observed, "When faced with a claim for coverage, it is not sufficient for the carrier to merely sit back and engage in cursory investigation, seeking excuses for lack of information. Without any showing on the record of a bona fide attempt to investigate, how can the court conclude there is a concrete showing of prejudice[?]"

▮ We agree. The evidence offered by Cooperative was insufficient as a matter of law to raise a genuine dispute as to whether it had suffered actual prejudice. Accordingly, we conclude that the trial court did not err in granting summary judgment to defendants. See *Baldwin v. Upper Valley Servs., Inc.*, 162 Vt. 51, 55, 644 A.2d 316, 318 (1994) (summary judgment is appropriate where there is no genuine issue of material fact and the moving party it entitled to judgment as a matter of law).

*Affirmed.*