# Northshire Communications, Inc., d/b/a WEQX (FM) v. AIU Insurance Company

[811 A.2d 216]

No. 00-325

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed October 25, 2002

*Devin McLaughlin* and *James W. Swift* of *Langrock Sperry & Wool*, Middlebury, for Plaintiff-Appellant.

*Kaveh S. Shahi* of *Cleary Shahi Associates, P.C.*, Rutland, for Defendant-Appellee.

**Skoglund, J.** Plaintiff Northshire Communications, Inc. ("Northshire") appeals from a jury verdict in favor of defendant AIU Insurance Company ("AIU") in this insurance coverage action. The jury found that AIU was substantially prejudiced by Northshire's failure to comply with the prompt-notice provision of its liability insurance policy and thus was not required to provide coverage. On appeal, Northshire contends that it was entitled to judgment as a matter of law on AIU's affirmative coverage defense that Northshire breached the prompt-notice provision of their insurance contract. To support this contention, Northshire argues that an insurer cannot be substantially prejudiced by a five-year delay in notice of a claim when that insurer would have denied coverage for reasons independent of that late notice if given proper notice of that claim. We hold that an insurer can defend denial of coverage based on a breach of a prompt-notice provision in the insurance contract notwithstanding its reliance on other, independent grounds for denial of coverage. We therefore affirm.

Northshire owns and operates an FM commercial broadcast radio station based in Manchester that serves a significant portion of the southwestern region of the state. In early 1990, a dispute arose between Northshire and a local rival, Rothschild Broadcasting Inc. ("Rothschild"), after Northshire learned that Rothschild intended to broadcast its signal into Northshire's listening area through a translator located on land owned by Carthusian Monks atop Mt. Equinox. On June 21, 1990, Northshire filed a lawsuit against Rothschild in superior court alleging use of an illegal translator to unlawfully rebroadcast Rothschild's signal. Northshire also named as defendants two current Rothschild employees, Samuel Stern and Christopher Cross, both of whom were former Northshire employees, alleging that Stern and Cross improperly appropriated and used confidential information they had acquired while employed by Northshire. Northshire also filed a petition with the Federal Communications Commission ("FCC") contesting Rothschild's radio license renewal application.

In November of 1990, Rothschild filed a counterclaim against Northshire alleging, inter alia, claims of defamation of employees, trade libel, commercial disparagement and business defamation. For the next five years, Northshire apparently focused its resources primarily on the FCC licensing proceedings in Washington, D.C. By late 1995, Northshire had lost its objection to Rothschild's license with the FCC. Based on the FCC ruling, Rothschild moved for and

prevailed on a motion for partial summary judgment on Northshire's claim in the superior court that Rothschild was using an illegal translator.

Northshire retained new counsel in December 1995. New counsel reviewed Northshire's position relative to Rothschild's counterclaim and determined that prior counsel had undertaken scant discovery relating to Rothschild's counterclaim. In March of 1996, Northshire attempted discovery seeking basic information about Rothschild's counterclaim. After receiving no response from Rothschild and then losing a motion to compel discovery because of a 1994 discovery order between the parties barring discovery after a final decision from the FCC, on July 19, 1996, Northshire filed a motion for permission to obtain "[r]udimentary discovery as to the acts alleged and the damages claimed" in the counterclaim. Northshire argued that it had failed to "undertake any written discovery as to [Rothschild's] substantial counterclaim" and that a denial of discovery allowing Northshire to learn "the most basic type of information concerning [the] counterclaim ... would materially prejudice effective representation" and force Northshire to "go into trial blind." In an opinion and order dated August 27, 1996, the superior court denied Northshire's motion and foreclosed any further discovery, noting that the "parties have had more than ample time over the past six years to conduct discovery on *all* of the issues in the case. Counsel's decision, in this multi-dimensional lawsuit, to conduct discovery only on certain issues was a conscious and/or tactical decision which the Court will not relieve them of at this stage."

Rothschild then brought a second suit against Northshire on October 22, 1996 alleging malicious prosecution. Finally, on November 1, 1996, three days before jury selection was scheduled for a trial on Northshire's remaining claims and Rothschild's counterclaim, Northshire settled all pending claims with Rothschild for $40,000, and the relevant suits were dismissed with prejudice.

Throughout the entirety of these proceedings, Northshire had a general liability insurance policy with defendant AIU. As a condition precedent to coverage, the policy required Northshire to provide AIU with prompt written notice of any claim or suit brought against the insured. For reasons not entirely clear from the record, Northshire failed to notify AIU of Rothschild's 1990 counterclaim until December 1995. On April 4, 1996, AIU responded to Northshire's late notice by requesting any reasons or explanations for the failure to provide prompt notice, as well as a description of any activities Northshire had

performed in its investigation of the counterclaim, in order to aid AIU in making a final determination of coverage. Northshire failed to respond to AIU's initial request. On May 22, 1996, AIU again sent Northshire a written request for information relating to the late notice and the counterclaim. On May 29, 1996, AIU received a brief and inaccurate written response from Northshire's original counsel as to the amount of discovery undertaken and completed. AIU was not informed about the evaluation of completed discovery by Northshire's new counsel or the August 27 superior court order foreclosing any further discovery relating to the counterclaim.

AIU denied Northshire's coverage claim by a letter dated September 17, 1996. This denial letter listed several reasons, including failure to provide prompt written notice of the counterclaim, as justification for denial of coverage. On October 28, 1996, AIU received a copy of the complaint in the second suit filed against Northshire from Northshire's agent. As noted above, three days later, without its consent or knowledge and before AIU could respond to the second suit, Northshire settled both suits for $40,000.

After settling its claims with Rothschild, Northshire brought an action against AIU for indemnity and contribution. At trial, Northshire argued that AIU was not substantially prejudiced by Northshire's failure to notify the insurer until five years after Rothschild's counterclaim arose because AIU would have denied coverage if given prompt notice in 1990. The jury returned a verdict in favor of AIU, finding by special interrogatory that Northshire's failure to provide prompt notice of Rothschild's counterclaim resulted in substantial prejudice to AIU. Northshire then moved for judgment as a matter of law and a new trial, both of which the trial court denied. Northshire now appeals from this verdict and the denial of its motion.

█ In an appeal from the denial of a post-verdict motion for a judgment as a matter of law, we view the evidence in the light most favorable to the nonmoving party. *Brueckner v. Norwich Univ.*, 169 Vt. 118, 122, 730 A.2d 1086, 1090 (1999). A judgment as a matter of law may be granted when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the nonmoving] party." V.R.C.P. 50(a)(1), (b). If the evidence fairly and reasonably supports the nonmoving party, judgment as a matter of law is improper. *Brueckner*, 169 Vt. at 122, 730 A.2d at 1090; see also *Haynes v. Golub Corp.*, 166 Vt. 228, 233, 692 A.2d 377, 380 (1997) (on review of motion for judgment as a matter of law, Court determines whether result reached by the jury is " 'sound in law on the evidence produced' ") (quoting

*Foote v. Simmonds Precision Prods. Co.*, 158 Vt. 566, 570, 613 A.2d 1277, 1279 (1992)). We will uphold the trial court's denial of a motion for judgment as a matter of law if any evidence fairly or reasonably supports a lawful theory of the nonmoving party. *Haynes*, 166 Vt. at 233, 692 A.2d at 380. We find that the jury verdict in favor of AIU is sound and must stand.

In 1997, this Court departed from nearly sixty years of precedent and adopted a modern view of prompt-notice provisions in insurance contracts by holding that an insured's failure to provide prompt notice does not automatically defeat liability insurance coverage. *Coop. Fire Ins. Ass'n v. White Caps, Inc.*, 166 Vt. 355, 359, 694 A.2d 34, 36 (1997). While noting the value and importance of prompt-notice provisions, we recognized that the forfeiture of coverage for breach of these provisions is unfair to insureds when that breach does not prejudice the insurer's position relative to the coverage claim. *Id.* at 360-61, 694 A.2d at 37-38 (citing *Cooper v. Gov't Employees Ins. Co.*, 237 A.2d 870, 873-74 (N.J. 1968)). Pursuant to the holding in *White Caps*, an insurer that seeks to be relieved of its obligations under a liability insurance policy because of a breach of the prompt-notice provision must prove that the breach resulted in substantial prejudice to its position in the underlying action. *Id.* at 362, 694 A.2d at 38.

Northshire's primary argument is that AIU could not be substantially prejudiced by the late notice of the coverage claim because AIU would have denied coverage had it received prompt notice in 1990, thus it would not have been involved in the defense of the counterclaim, and consequently it cannot complain about how the case, including the discovery component, was handled. Northshire posits that AIU's coverage denial letter citing several coverage defenses independent of late notice supports its contention that AIU would have denied coverage in 1990. This reasoning is flawed.

It is a general principle of law in this state that an insurer must specify all of its reasons for denial of coverage or those defenses not mentioned are waived. *Segalla v. United States Fire Ins. Co.*, 135 Vt. 185, 189, 373 A.2d 535, 538 (1977). AIU was thus required to set forth all its coverage defenses in its letter to Northshire denying coverage in order to avoid waiver of those defenses. *Id.*; see also *Armstrong v. Hanover Ins. Co.*, 130 Vt. 182, 187-88, 289 A.2d 669, 672-73 (1972) (holding that an insurer who gave no indication that it reserved, or desired to reserve, the right to raise any reason for denying coverage was estopped from doing so). By merely listing all

coverage defenses that AIU believed were applicable and potentially supported a denial of coverage, AIU cannot be said to have forfeited its right to base its denial of coverage on a violation of the prompt-notice provision or its ability to claim substantial prejudice from the same. It would be unfair to require that insurers list all potential coverage defenses and then hold them as estopped from raising a defense of late notice because they complied with this mandate. See *White Caps*, 166 Vt. at 362, 694 A.2d at 38 (allowing insurer to assert breach of prompt-notice provision as affirmative coverage defense if breach caused substantial prejudice); *Segalla*, 135 Vt. at 189, 373 A.2d at 538 (requiring insurers to list all potential coverage defenses to avoid waiver). Accordingly, AIU was entitled to defend its denial of coverage on the basis that Northshire had breached the prompt-notice provision of the insurance contract.

Northshire also submits the testimony of an AIU claims adjuster to support its contention that AIU would have denied Northshire's coverage claim if given notice in 1990 and, consequently, not have participated in the underlying lawsuit. While this adjuster testified that in her opinion the claim would have been denied in 1990, she added that an adjuster's decision to deny coverage would then be reviewed and approved by the office or unit manager, and, depending on the complexity of the question, may be referred to coverage counsel before denial was affirmed. The coverage denial process described by the adjuster's testimony did little more than emphasize the inconclusive nature of AIU's initial coverage determination. While AIU's September 17 letter indicated that coverage was denied, the author closed with the following: "Needless to say, should you have any information which you believe will have an impact on the coverage, we will review it and reevaluate the availability of coverage accordingly."

Moreover, the evidence presented through the claims adjuster was speculative at best. "Evidence which merely makes it *possible* for the fact in issue to be as alleged, or which raises a mere conjecture, surmise or suspicion, is an insufficient foundation for a verdict." *Lewis v. Vt. Gas Corp.*, 121 Vt. 168, 179, 151 A.2d 297, 304 (1959) (emphasis added); see also *Westinghouse Elec. Supply Co. v. B.L. Allen, Inc.*, 138 Vt. 84, 98, 413 A.2d 122, 133 (1980); *Winter v. Unaitis*, 124 Vt. 249, 252, 204 A.2d 115, 117 (1964). The mere possibility that Northshire's coverage claim would have been denied if AIU had examined the claim at a certain time, in a certain context, and by certain personnel is too speculative and remote to be persuasive. It also misses the point of

AIU's defense — that it was substantially prejudiced by the delay in notification. However, Northshire suggests that AIU was required to produce evidence that it would have "in fact provided coverage if Northshire had given timely notice." AIU had no such burden. Northshire's requirement would allow insureds — as the facts in this case demonstrate — to ignore prompt-notice provisions for a significant period of time, litigate a case, and then seek indemnification for an undesirable outcome over which the insurer had no control. This result would vitiate the purpose of prompt-notice provisions. While *White Caps* did provide some relief for an insured's breach of prompt-notice provisions by holding that such a failure would not automatically defeat liability insurance coverage regardless of the circumstances, our decision did not ignore the efficacy and importance of prompt-notice provisions. As we emphasized, the purpose of a notice provision " 'is to allow the insurer to form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, and to prevent fraud and imposition upon it.' " *White Caps*, 166 Vt. at 361, 694 A.2d at 38 (quoting *Stonewall Ins. Co. v. Moorby*, 130 Vt. 562, 567, 298 A.2d 826, 829 (1972)). Requiring an insurer to offer evidence of a hypothetical coverage determination would lead to rank speculation and prove nothing.

Northshire further contends that any finding of substantial prejudice to AIU's interests in this case is inconsistent with our decision in *White Caps*. Northshire is incorrect. In *White Caps*, we found that the insurer failed to show that its position in defending the underlying claim had been prejudiced by an eighteen-month delay in notification. The insurer did not assert that it had made any investigative effort to identify potential witnesses to the accident, or that any particular witness was unavailable or had suffered memory loss, that any evidence had been lost or was unavailable, or that it had actually made any significant investigation of the incident following notice of the claim. " 'An insurer cannot assert prejudice with regard to its ability to conduct an investigation that it never even tried to conduct.' " *Id.* at 364, 694 A.2d at 39 (quoting *General Accident Ins. Co. v. Scott*, 669 A.2d 773, 780 (Md. Ct. Spec. App. 1996)). In contrast, Northshire's five-year delay in providing AIU with notice left AIU with no opportunity to investigate the claim; there had been little discovery on Rothschild's counterclaims and discovery had been emphatically closed by the court. AIU's attempts to learn the status of the litigation were met with misinformation and apparently deliberate obfuscation. Unlike the insurance provider in *White Caps*, AIU did not

"merely sit back and engage in cursory investigation." *Id.* at 364, 694 A.2d at 39. Therefore, finding that AIU's position relative to the underlying claim against Northshire was substantially prejudiced by Northshire's breach of the prompt-notice provision is consistent with our decision in *White Caps*.

We conclude that the jury's finding that Northshire's breach of the prompt-notice provision caused substantial prejudice to AIU's interests relative to the underlying claim is sound in law on the evidence produced. Northshire's own pleas to the trial court in its motion for permission to obtain discovery belies any suggestion to the contrary. Accordingly, the jury's verdict finding substantial prejudice to AIU was proper. Since the evidence fairly and reasonable supports AIU, the trial court's denial of Northshire's motion for judgment as a matter of law was also appropriate.

*Affirmed.*