2003 VT 61

# Michelle Smith v. Nationwide Mutual Insurance Co.

[830 A.2d 108]

No. 02-020

Present: Amestoy, C.J., Dooley, Morse,[1] Johnson and Skoglund, JJ.

Opinion Filed June 27, 2003

---

[1] Justice Morse sat at oral argument but did not participate in this decision.

356

*Joseph C. Benning*, Lyndonville, for Plaintiff-Appellee.

*John E. Brady* and *Brendan P. Donahue* of *Brady & Callahan*, *P.C.*, Springfield, for Defendant-Appellant.

¶ 1. **Skoglund, J.** This is a declaratory judgment action concerning automobile insurance. Defendant Nationwide Mutual Insurance Company ("Nationwide") appeals from an order holding it liable to its insured for a judgment entered against him in a lawsuit arising from an automobile accident that Nationwide failed to defend. Nationwide argues that it owed no defense because its insured breached its duties under the contract of insurance and was unable to defend without his cooperation. We hold that the insurer's obligations under the contract of insurance were not relieved by the insured's actions in this case. We affirm.

¶ 2. The underlying facts of the tort litigation that generated this suit and subsequent appeal are undisputed. In March 1995, plaintiff Michelle Smith and her daughter were driving their automobile along Route 122 in Wheelock, Vermont, when they collided with a telephone

pole that had been downed after being hit by a vehicle driven by Wayne-Arthur: Sullivan. Both Smith and her daughter were injured in the accident. A subsequent state police accident report assigned Sullivan the entire fault for the accident. At that time, Sullivan was insured under an automobile liability insurance policy issued by defendant Nationwide.

¶ 3. Nationwide received appropriate notice of the accident and conducted an investigation. Following its investigation, Nationwide settled a personal injury claim with Smith's daughter and a property damage claim for Smith's vehicle. Nationwide did not, however, resolve Smith's personal injury claim. Consequently, Smith filed suit against Sullivan in superior court to recover for her personal injuries. In February 1998, Sullivan was personally served with the summons and complaint in plaintiff's action. In response, Sullivan filed numerous pro se pleadings challenging his personal identification and insisting that he be addressed as "Wayne-Arthur: Sullivan." Based on these pleadings, the court established personal jurisdiction over Sullivan.

¶ 4. Sullivan forwarded the relevant court documents to Nationwide. Nationwide recognized its obligation to its insured under its insurance policy and retained attorney Michael Gannon to represent Sullivan in Smith's personal injury suit. Gannon and Sullivan exchanged letters and telephone calls, and met at least once to discuss Gannon's representation of Sullivan. However, for reasons apparently stemming from a belief that any and all court proceedings against him or in which he is involved violate fundamental principles of natural law, the Uniform Commercial Code, and state and federal constitutions, Sullivan objected to Gannon's filing of an appearance on his behalf. As a result, Gannon did not enter an appearance on behalf of Sullivan. Nationwide took no further action to defend Sullivan or determine its coverage obligations.

¶ 5. Sullivan did not appear at a July 1998 merits hearing in *Smith v. Sullivan*, Docket # 50-3-98CaCv, and the trial court entered a default judgment in favor of Smith. Subsequently, the trial court scheduled, noticed, and held a damages hearing on November 13, 1998. Nationwide had actual notice of the default judgment and at least ten days prior notice of the damages hearing. Indeed, on November 3, Nationwide sent a letter warning Sullivan of the possible consequences of his "non-cooperation" with Nationwide and his designated attorney, noting that "a money judgment may be entered against you" and that Nationwide would not "indemnify you against any judgment." Neither Sullivan nor Nationwide appeared at the hearing. Apart from the

letter to Sullivan, Nationwide took no additional steps to represent Sullivan's interests or its own interests at the damages hearing. On November 30, the court entered a judgment for Smith in the amount of $60,000.

¶ 6. In July 1999, Smith filed this action against Nationwide to recover the damages the court had awarded her in her suit against Sullivan. In its answer to Smith's complaint, Nationwide denied liability to plaintiff based on what it characterized as Sullivan's failure to cooperate. One year later, in July 2000, Nationwide filed a motion for summary judgment, which was denied. After a period of discovery, Smith filed her own motion for summary judgment. Nationwide opposed the motion and renewed its own motion for summary judgment.

¶ 7. Following a hearing, the court issued a written decision granting Smith's motion for summary judgment, denying Nationwide's cross-motion, and ordering Nationwide to pay Smith the amount of damages awarded in the underlying suit. The court held as a matter of law that Sullivan did not breach the "assistance" clause of the policy, and that Nationwide was not substantially prejudiced by Sullivan's conduct. Nationwide filed a motion for reconsideration and a motion to amend the judgment Smith had obtained against Sullivan. The court issued a post-judgment order denying Nationwide's motion to reconsider, but granting its motion to amend, reducing the amount of damages awarded to $50,000, the per-person coverage limit of the policy. This appeal followed.

¶ 8. This Court's review of summary judgment is de novo, and in proceeding with that review, we apply the same standard as the trial court. *Springfield Terminal Ry. v. Agency of Transp.*, 174 Vt. 341, 344, 816 A.2d 448, 452 (2002). Summary judgment is appropriate only where the record demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. V.R.C.P. 56; *Guiel v. Allstate Ins. Co.*, 170 Vt. 464, 467, 756 A.2d 777, 780 (2000). When evaluating a motion for summary judgment, we give the benefit of all reasonable doubts and inferences to the nonmoving party. *Sabia v. Neville*, 165 Vt. 515, 523, 687 A.2d 469, 474 (1996). Here, both parties moved for summary judgment at the trial level, and thus both were entitled to the benefit of all reasonable doubts and inferences when judging the opposing party's motion. *Bixler v. Bullard*, 172 Vt. 53, 57, 769 A.2d 690, 694 (2001).

¶ 9. Nationwide claims that the trial court erred in concluding: (1) that Sullivan did not breach the "cooperation" or "assistance" clause of

the insurance policy; and (2) that Sullivan's conduct did not prejudice Nationwide's ability to defend against plaintiff's personal injury claim. In support of its claims, Nationwide raises several issues concerning the ethical duties and obligations of counsel retained for Sullivan. In this case, however, those ethical considerations do not affect the determination of the insurer's and insured's obligations under the insurance policy. The issues germane to this appeal are whether Sullivan's refusal to allow insurance counsel to enter an appearance on his behalf breached the terms of the insurance contract, and whether any such breach prejudiced Nationwide's position relative to Smith's personal injury claim, therefore relieving Nationwide of its obligations under the policy. We hold that Nationwide was not prejudiced by Sullivan's actions and remains obligated for the judgment entered against its insured.

¶ 10. An insured's refusal to cooperate with the terms of an insurance contract can vitiate the policy and relieve the insurer of its obligation to defend or indemnify the insured. *Quintin v. Miller*, 138 Vt. 487, 489, 417 A.2d 941, 942 (1980). An insurer attempting to avoid its coverage obligations based on an insured's noncooperation has the burden of demonstrating the insured's lack of cooperation and "the actual prejudice resulting therefrom." *Am. Fid. Co. v. Kerr*, 138 Vt. 359, 362, 416 A.2d 163, 165 (1980); see also *Francis v. London Guar. & Accident Co.*, 100 Vt. 425, 428, 138 A. 780, 781 (1927). Normally, the existence of prejudice from noncooperation is a question for the trier of fact. See *Coop. Fire Ins. Ass'n of Vt. v. White Caps, Inc.*, 166 Vt. 355, 363, 694 A.2d 34, 39 (1997). However, summary judgment on the issue of prejudice is appropriate when the insurer fails to adduce any evidence that its insured's breach placed the insurer in a substantially less favorable position than it would have been had the insured fully cooperated. See *id.* at 363-64, 694 A.2d at 39. In this case, summary judgment was appropriate.

¶ 11. To support its position that Sullivan's conduct breached the insurance contract, Nationwide invokes what it calls the "cooperation" clause of the policy.[2] The clause reads:

---

[2] The trial court, while referring to the correct amendatory endorsement of the Nationwide automobile liability policy, incorrectly quoted language from the "general policy conditions" of "Nationwide's Century II Auto Policy." The "assistance" clause recited by the trial court was replaced by amendatory endorsement 1523B and is the operative contractual language at issue in this appeal.

## 1. INSURED PERSONS' DUTIES

The insured will:

a) give us or our agent prompt notice of all losses and proof of claim if required.

b) notify the police of all theft losses.

c) promptly deliver to us all papers dealing with any claims or suits.

d) submit to examination under oath as often as reasonably requested by us.

e) assist us with any claim or suit . . . .

An insurance contract is construed "according to its terms and the evident intent of the parties as expressed in the policy language." *Ulm v. Ford Motor Co.*, 170 Vt. 281, 295, 750 A.2d 981, 992 (2000). Disputed terms are assigned their plain, ordinary, and popular meaning. *Id.* Any ambiguities in disputed terms are resolved in favor of the insured and against the compensated insurer responsible for drafting those provisions. *State v. CNA Ins. Cos.*, 172 Vt. 318, 324, 779 A.2d 662, 667 (2001); *Boyer v. Am. Cas. Co.*, 332 F.2d 708, 711 (2d Cir. 1964) (applying Vermont law). As the parties have recognized, the meaning and content of the term "assist" as it is employed in the policy lends itself to various interpretations. Consequently, we will interpret the disputed term in favor of the insured.

■ ¶ 12. The primary purpose of a cooperation clause is to enable insurers to make a proper investigation while the information is fresh, enable them to decide upon their obligations, and protect them from fraudulent and false claims. See 14 L. Russ, Couch on Insurance § 199:4, at 199-13 (2002) (describing primary purpose of cooperation clause); cf. *Northshire Communications, Inc. v. AIU Ins. Co.*, 174 Vt. 295, 301, 811 A.2d 216, 221 (2002) (purpose of prompt-notice provision as allowing an insurer to "form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, and to prevent fraud and imposition upon it.") (internal quotations omitted); *White Caps*, 166 Vt. at 361, 694 A.2d at 38. As we explain below, the primary purpose of the cooperation clause in Sullivan's policy was substantially met in this case when Sullivan promptly delivered notice of the accident and provided the relevant court documents to Nationwide.

¶ 13. To be sure, Sullivan made it difficult for Nationwide to proceed in the underlying suit. As the trial court observed, Sullivan's recalcitrance presented Nationwide with "a delicate conundrum." Nationwide's reaction to Sullivan's behavior, however, must be evaluated in light of the rationale, or more accurately, the irrationality behind Sullivan's objection to participation in the suit. According to Nationwide, Sullivan objected to Gannon entering an appearance on his behalf because he "believed Plaintiff's counsel had knowingly misstated his name as 'Wayne Sullivan' rather than 'Wayne-Arthur: Sullivan' in the . . . Complaint," and as a result, felt that there was no valid court action pending against him. Notwithstanding this asserted position, Sullivan's objections and refusal to officially participate in court proceedings were selective. Sullivan filed what the trial court labeled "numerous, and voluminous pro se 'pleadings' with the [c]ourt" in the civil suit. Additionally, Sullivan's objections to Gannon's representation had nothing to do with the substance or merits of any defense that might have been presented on his behalf; his refusal was based on philosophical positions unrelated to the particular lawsuit itself. Nationwide fully comprehended the futile nature of Sullivan's proposed approach to Smith's suit — pretending that it did not legally exist — and his unique views of the legal system in general, and acknowledged as much in a letter chiding Sullivan for sending documents the insurer deemed "largely rambling pseudo-legal gibberish which are nonsensical at best and unintelligible at worst."

¶ 14. Nationwide had responsibilities and obligations under the contract as well. The policy authorized Nationwide to retain defense counsel for Sullivan in the underlying tort claim and assigned control and management of the defense to Nationwide. It obligated Nationwide to "defend at our expense, with attorneys of our choice, any suit against the insured where jurisdiction of the court has been obtained without reference to our obligations in this policy. We may investigate, negotiate, and settle any claim or suit as we think appropriate." Relying on the affidavit submitted by Nationwide's adjuster/claims agent, the trial court found that Nationwide would have been in complete control of the merits and the substance of any defense presented in the tort claims case. We agree with this conclusion.

¶ 15. As the trial court found, again based on the affidavit of Nationwide's adjuster/claims agent, Nationwide failed to suggest anything that Sullivan himself did, or did not do, which would have served to materially assist in the actual preparation and presentation

of the contemplated defense. Sullivan's conduct may have frustrated Nationwide, but a cooperation or "assistance" clause, like a prompt-notice provision of an insurance contract, should not function as "a technical escape-hatch by which to deny coverage in the absence of prejudice." *White Caps*, 166 Vt. at 362, 694 A.2d at 38 (internal quotations omitted). An insured's failure to cooperate with its insurer will not relieve the insurer of its coverage obligations unless that noncooperation has, in a significant way, hindered or precluded the insurer from presenting a credible defense to the underlying claim. *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 767 A.2d 831, 844 (Md. 2001) (prejudice resulted when insured's noncooperation precluded insurer from offering *any* evidence in defense of the claim); see also *Quintin*, 138 Vt. at 489-90, 417 A.2d at 943 (insurer not obligated to defend following insured's intentional concealment or misrepresentation of material fact that individual injured on insured's premises was an employee, which policy excluded from coverage). The fundamental question in this appeal, therefore, is not whether Sullivan made it difficult for Nationwide when he chose, in his fashion, to ignore the lawsuit, but whether that position prejudiced Nationwide's position relative to the litigation.

¶ 16. In arguing that it was prejudiced, Nationwide contends that Sullivan's refusal to permit attorney Gannon to appear and defend precluded Gannon from "conducting discovery, taking depositions, etc., or in any way challenging Plaintiff's evidence." However, as the trial court noted, Nationwide was able to determine that it was obligated to defend Sullivan in the underlying tort claim and was able to conduct discovery sufficient to settle claims with Smith's daughter for her personal injuries and with Smith for damage to her vehicle.

¶ 17. Nationwide's investigation also resulted in the insurer's belief that issues of proximate cause and comparative negligence were present in the case. Nationwide avers that the difficulties posed by Sullivan resulted in Gannon's inability to present evidence of plaintiff's alleged "preexisting degenerative condition," thus preventing a challenge to the proximate cause and value of plaintiff's alleged damages. From the affidavit of Nationwide's insurance adjuster, it appears that Gannon would also have asserted comparative negligence by claiming that Smith was operating her vehicle at an improper rate of speed at the time of the accident. Thus, it appears that the insurer was able to make a proper investigation while the information was fresh, and to decide upon its contractual obligations. These results demonstrate that Sullivan's prompt notification to Nationwide of the

*underlying* suit went a long way toward fulfilling the purpose of the cooperation or "assistance" clause.

¶ 18. Nationwide argues that it could not defend the suit because Sullivan refused to allow Gannon to represent him. While Gannon may not have been ethically permitted to enter an appearance on Sullivan's behalf, Nationwide had several viable options available to it. To protect its own interests in Smith's tort action, Nationwide, through its own independent counsel, could have notified Smith's counsel of its predicament so that Smith could join Nationwide in the suit. Nationwide could have moved for intervention pursuant to V.R.C.P. 24 to alert the trial court to its difficulties with its insured. See V.R.C.P. 24(a) (providing for intervention of right when "the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties"); *Ulm*, 170 Vt. at 294, 750 A.2d at 991 (insurer moved for and was granted intervener status in motor vehicle passenger's products liability claim against manufacturer); see also *Davila v. Arlasky*, 857 F. Supp. 1258, 1260 (N.D. Ill. 1994) (court granted insurer's motion to intervene in light of insured's failure to appear and unwillingness or inability to pay judgments entered against him). Nationwide could have petitioned the court for a declaratory judgment to determine its coverage obligations under the policy before entry of the default judgment. *Commercial Ins. Co. of N.J. v. Papandrea*, 121 Vt. 386, 392, 159 A.2d 333, 337 (1960) (declaratory judgment useful and the court should grant it when it clarifies "the legal relations of the parties or if it will terminate the uncertainty and insecurity of the controversy"); *Farm Bureau Mut. Auto. Ins. Co. v. Houle*, 118 Vt. 154, 158, 102 A.2d 326, 329 (1954) (establishing availability of declaratory judgment to determine an insurer's obligations under a contract of insurance). Additionally, Nationwide could have moved to enjoin plaintiff's underlying claim while the trial court considered the insurer's petition for declaratory relief. See *State v. Glens Falls Ins. Co.*, 134 Vt. 443, 450, 365 A.2d 243, 247 (1976) (citing *Houle* for the proposition that insurer has "powerful remedy of enjoining a claimant's action at law to prevent irreparable

damage ... to an insurer" when insured will not assent to nonwaiver agreement).[3]

¶ 19. Notwithstanding the availability of these options, Nationwide did nothing. In discharging their duties specified in and incident to the insurance policy, an insurer and an insured owe to each other a duty of good faith and fidelity. *Peerless Cas. Co. v. Cole*, 121 Vt. 258, 265, 155 A.2d 866, 871 (1959). Therefore, if a policy of insurance gives an insurer control over the handling of a claim, including decisions concerning litigation and settlement, as the policy did in this case, then the insurer must conscientiously fulfill that duty. See *Rodriguez v. Am. Ambassador Cas. Co.*, 4 F. Supp. 2d 1153, 1156 (M.D. Fla. 1998), *aff'd*, 170 F.3d 188 (11th Cir. 1999).

¶ 20. Despite its knowledge of Sullivan's skewed perception of the merits of Smith's personal injury action, Nationwide's efforts to fulfill its contractual obligation to properly control the lawsuit consisted merely of urging its insured to allow counsel to enter an appearance on his behalf. As the trial court noted, "[i]nstead of somehow bringing the problem [with Sullivan] to the attention of the [c]ourt, or the Department of Banking and Insurance, or someone, Nationwide chose to remain silent about its dilemma and let a default judgment be entered against Sullivan." Nationwide's meager effort distinguishes this case from others where an insurer's due diligence was a critical factor in evaluating an insured's alleged breach of a cooperation clause. To successfully invoke a defense of noncooperation, diligent effort to secure the cooperation of a recalcitrant insured is required, and, as found by one court, it includes more than simply sending letters to the insured, or telephoning them and requesting their appearance at trial when insurer "could have done much more to secure [their insured's] cooperation." *Wallace v. Woolfolk*, 728 N.E.2d 816, 820 (Ill. App. Ct. 2000) (insurer failed to make diligent efforts to obtain cooperation of insured by sending her six letters and making one telephone call, where insurer had reason to know that insured was either not receiving letters or ignoring them). While diligent efforts must be evaluated in light of the specific circumstances involved in each particular case, an insurer's burden is substantial. See *Thrasher v. United States Liab. Ins. Co.*, 225 N.E.2d 503, 508 (N.Y. 1967) ("[T]he burden of proving the lack of co-operation is a heavy one indeed.").

---

[3] In addition, Nationwide could have settled Smith's claim without assistance from Sullivan, as it did with the other claims stemming from the accident.

Although additional letters or requests may have made no difference with Sullivan, it was proper for the court to consider Nationwide's actions, or lack thereof, when assessing whether or not insured failed "to assist," and whether or not Sullivan's action prejudiced Nationwide.

¶ 21. Nationwide cannot assert prejudice with regard to its ability to conduct a defense that it never attempted to mount. See *White Caps*, 166 Vt. at 364, 694 A.2d at 38 (stating analogous proposition that "[a]n insurer cannot assert prejudice with regard to its ability to conduct an investigation that it never even tried to conduct.") (internal quotations omitted). Given the options available to Nationwide, and its apparent tactical decision to take no action following Sullivan's objections to counsel's representation, we cannot conclude that Sullivan's conduct prejudiced Nationwide by placing it in a "substantially less favorable position than it would have been in" had Sullivan not raised objections to participating in the litigation. *Id.* at 362, 694 A.2d at 38 (internal quotations omitted).

¶ 22. We recognize that, had Nationwide gone forward with a defense of Smith's suit, it may well have been proceeding without Sullivan's cooperation. The absence of the insured, however, does not alone establish prejudice; Nationwide must show that its insured's absence actually prejudiced its ability to mount a defense. See *Kerr*, 138 Vt. at 362, 416 A.2d at 165 (insurer must prove that lack of cooperation of its insured by nonattendance at trial caused actual prejudice). In this case, Sullivan's presence and participation at trial would not have assisted Nationwide in asserting that Smith has a pre-existing degenerative condition. Nor could Sullivan have assisted Nationwide in asserting the defense of comparative negligence. According to the State Police Accident Report appended to Nationwide's motion for summary judgment, Sullivan revealed at the accident scene that he had no idea why he lost control of his vehicle and flipped it off the roadway after knocking down a telephone pole across the northbound lane. Smith, traveling north, collided with the telephone pole and the wires that hung from it. At the time Smith collided with the pole, Sullivan was in his overturned vehicle, which was in the river over the side of the road. As such, it does not appear that Sullivan could have added relevant or substantive information as to Smith's vehicular operation.

¶ 23. Nationwide, however, rejects any suggestion that it was required to clarify its position, arguing that, while this Court's holding in *Houle*, 118 Vt. at 158, 102 A.2d at 329, affords insurers the opportunity to petition for declaratory relief, the Court's decision did

not negate other options available to the insurer, such as denying liability and risking a suit on the policy in the event that the plaintiff obtains a judgment against its insured. The Court in *Houle* did not specifically endorse inaction as Nationwide avers, although it acknowledged that the option existed. See *id.* at 157-58, 102 A.2d at 328-29.

¶ 24. In the fifty years since *Houle*, preemptive suits to determine coverage obligations have become a common approach of insurers in Vermont. See, e.g., *N. Sec. Ins. Co. v. Perron*, 172 Vt. 204, 207, 777 A.2d 151, 153 (2001) (homeowner's liability insurer brought declaratory action alleging no duty to defend its insured in tort action); *Champlain Cas. Co. v. Agency Rent-A-Car, Inc.*, 168 Vt. 91, 92, 716 A.2d 810, 811 (1998) (insurer petitioned for declaratory relief to determine coverage obligations); *Kerr*, 138 Vt. at 360, 416 A.2d at 164 (insurer sought declaratory judgment with regard to coverage obligations). Some jurisdictions require an insurer to determine its coverage obligations before the underlying tort action is complete. See *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1138 (Ill. 1999) ("Where an insurer waits to bring its declaratory judgment action until after the underlying action has been resolved by a judgment or a settlement, the insurer's declaratory judgment action is untimely as a matter of law."); *Cen. Mut. Ins. Co. v. Kammerling*, 571 N.E.2d 806, 810 (Ill. App. Ct. 1991) (" '[A] liability insurer in doubt over whether it has a duty to defend its insured, cannot simply stand on the sidelines and wait until the tort action is complete before contesting the question of coverage.' ") (quoting *Reis v. Aetna Cas. & Sur. Co.*, 387 N.E.2d 700, 704 (Ill. App. Ct. 1978)); see also *State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce*, 762 N.E.2d 1227, 1230-31 (Ind. 2002) (insurer who elects not to defend under a reservation of rights agreement in the underlying tort action, or does not file a declaratory judgment action, proceeds "at the insurer's peril" because that insurer is bound by the matters determined in the lawsuit under the doctrine of collateral estoppel). To do nothing is rarely a reasonable option. See *Palermo v. Fireman's Fund Ins. Co.*, 676 N.E.2d 1158, 1163 (Mass. App. Ct. 1997) ("An insurer who unjustifiably refuses or fails to defend its insured, even in good faith, assumes the consequential risks of that breach of its insurance contract [including] . . . liability for the amount of the judgment reflecting claims covered by the policy . . . .").

¶ 25. Considering the overarching policy considerations addressed in Vermont's Financial Responsibility and Compulsory Insurance Law, 23 V.S.A. §§ 800-810, we conclude that doing nothing is

not an option available to an insurer in these circumstances. Confronted with an uncooperative insured, an automobile liability insurance provider must protect its interest by filing a declaratory judgment action for a judicial determination of its obligations under the insurance policy, or move to intervene, or take some action to assure the viability and availability of insurance coverage consistent with the purpose of the Financial Responsibility and Compulsory Insurance law.

¶ 26. This approach is entirely consistent with an insurer's duty to defend its insured and the overriding purpose for mandatory automobile liability insurance. Chapter 11 of Title 23, entitled "Financial Responsibility and Insurance," creates compulsory automobile liability insurance for all owners or operators of motor vehicles in the state. See 23 V.S.A. § 800(a). This act is designed to "protect the public and ensure that those motor vehicle operators who cause accidents for which they are liable have adequate resources to satisfy any claims which arise therefrom." *Wright v. Malloy*, 373 F. Supp. 1011, 1016 (D. Vt.) (interpreting Vermont law), *aff'd*, 419 U.S. 987 (1974); *Agency Rent-A-Car, Inc.*, 168 Vt. at 101, 716 A.2d at 816 (citing *Malloy* with approval). Nationwide's behavior in this case frustrates the policy embodied in the statute. As the trial court recognized:

> that statutory scheme, and legislative policy determination, would be sorely frustrated if the mandated insurance coverage were to be lost to otherwise innocent motorists because an arguably negligent driver, who is covered by such insurance ... "refuses" to "allow" the insurer to enter an appearance ... thereby giving the carrier some arguable basis, as here, to declare its primary coverage responsibility to be void and thus unavailable to the injured motorist.

¶ 27. Consistent with Vermont's Financial Responsibility and Compulsory Insurance Law, automobile liability insurers with a duty to defend must make good faith and diligent efforts to fulfill their contractual obligation, which includes a demonstration that the insurer "acted diligently in seeking to bring about the insured's co-operation." *Thrasher*, 225 N.E.2d at 508. The defense of lack of cooperation penalizes a plaintiff for the action of an insured over whom the plaintiff has no control, and frustrates the policy of this state that resources be available to recompense innocent tort victims of motor vehicle accidents.

¶ 28. Nationwide failed to show that its insured breached his contractual duty to assist and failed to show that its position relative to the underlying claim was prejudiced by insured's conduct. See *Kerr*, 138 Vt. at 362, 416 A.2d at 165. Therefore, Nationwide was not relieved of its coverage obligations and remains obligated to compensate Smith for the damages awarded her. See *Peerless Cas. Co.*, 121 Vt. at 264, 155 A.2d at 871 (when insured's legal liability is established, insurer's obligation to pay injured persons becomes absolute under 23 V.S.A. §§ 800-810, Vermont's Motor Vehicle Financial Responsibility and Compulsory Insurance Law).

*Affirmed.*

