2005 VT 76

## Progressive Insurance Company v. Gregory Wasoka and Robert Cerdeira

[885 A.2d 1166]

No. 03-451

Present: Amestoy, C.J.,[1] Dooley, Johnson, Skoglund and Reiber, JJ.

Opinion Filed July 8, 2005
Motion for Reargument Denied August 17, 2005

---

[1] Chief Justice Amestoy sat for oral argument but did not participate in this decision.

*Laurie LeClair* and *Susan J. Flynn* of *Clark, Long, Werner & Flynn, P.C.*, Burlington, for Plaintiff-Appellant.

*Mark E. Furlan* of *Abatiell Associates, P.C.*, Rutland, for Defendant-Appellee Wasoka.

*John E. Brady* and *Brendan P. Donahue* of *Brady & Callahan, P.C.*, Springfield, for Defendant-Appellee Cerdeira.

¶ 1. **Johnson, J.** Progressive Insurance Company appeals from a denial of its motion for summary judgment against its insured, Gregory Wasoka, for fraud in the inducement of an automobile insurance policy. Progressive claims on appeal that the trial court misunderstood its motion for summary judgment and erroneously dismissed the entire case when Progressive had filed its motion based on only one of its claims. Progressive contends the trial court also erred by treating Wasoka's response as a cross-motion for summary judgment, which it claims raised new matters, without giving Progressive thirty days to respond. We affirm because we agree the motion asked the court to void the policy for fraud in the inducement as evidenced by Wasoka's noncooperation, defendant's response was directly related to fraud in the inducement, and the court's decision nineteen days later indicated that the undisputed facts did not show that Progressive was entitled to judgment on this issue. As a result, no further issues were left and the complaint was dismissed. Moreover, if there was prejudice as a result of the procedure the trial court followed, Progressive failed to come forward with any evidence of it, other than the unsubstantiated claims of counsel, despite filing two post-judgment motions.

¶ 2. The agreed facts are as follows. In July 2000, Gregory Wasoka purchased a Vermont automobile insurance policy from agent Steve

Shortle of C.G. McCullough Insurance Agency, Inc., of Killington, Vermont. In May 2001, Wasoka was involved in an automobile/bike accident in Connecticut with Robert Cerdeira. After informing Progressive of the accident, Wasoka agreed to be interviewed by Progressive agents on May 10, 2001 and May 22, 2001 respectively as part of the investigation. Progressive made no request that either of these first two interviews be given under oath. In a letter dated August 15, 2001, Progressive requested that Wasoka submit to a third interview, this time under oath. Wasoka received the letter but did not reply. In August 2002, Wasoka submitted to deposition by Progressive's counsel.

¶ 3. In the course of investigating the accident, Progressive learned the following uncontested facts that it submitted for consideration with its motion: (1) at the time of the accident, Wasoka was a student at Naugatuck Valley Community College in Connecticut, (2) at the time of both of the May 2001 investigatory interviews Wasoka was staying with his parents in Connecticut, (3) at the time of the second interview Wasoka was employed by Gary Industries in Connecticut, and (4) while Wasoka received limited mail at his brother's residence in Killington, Vermont, including his Progressive insurance bills, he received mail at his parents' house in Connecticut.[2]

¶ 4. Additionally, the following facts were submitted by Wasoka in the course of the investigation and deposition. During his second May interview, Wasoka stated he worked at the Killington Ski Resort in the fall and winter of 2000 while staying at his brother's condo in Killington. In August 2002 Wasoka testified in deposition that he lived in four different places at the time he purchased his insurance policy including his brother's residence in Killington, Vermont, his grandmother's cottage on Lake Bomoseen in Vermont, a friend's house in Winchester, New Hampshire, and his parents' house in Connecticut. Wasoka also testified in deposition that all that was required to obtain his Vermont insurance policy was his Vermont driver's license and a mailing address. He testified that he had known agent Shortle all his life as a family friend and that Shortle was aware, from conversations with Wasoka's father, that Wasoka traveled between many different places when he purchased the policy.

---

[2] Progressive's summary judgment motion also states that following the second May interview, a Progressive agent learned that Gary Industries had continually employed Wasoka for thirty-five hours per week since 1999. This assertion, however, is not supported in any documentation, nor is it cited in the statement of undisputed facts.

¶ 5. Progressive filed suit against Wasoka and Cerdeira in January 2002 seeking a declaratory judgment that Wasoka's insurance contract "is void *ab initio* due to [Wasoka's] fraudulent representations, and that there is no coverage under its policy for any claims arising out of the incident with Mr. Cerdeira due to Mr. Wasoka's failure to cooperate with Progressive and misrepresentations made in the course of presenting his claim." The contract contains the following cooperation clause: "[a] person claiming coverage under this policy must ... allow us to take signed or recorded statements, including statements under oath, and answer all reasonable questions we may ask, when and as often as we may reasonably require."

¶ 6. Progressive filed a "Motion for Summary Judgment" on January 28, 2003, claiming that "[d]efendant deliberately breached a policy provision that would have enabled his insurer to investigate the issue of fraud in the inducement of the policy, a legal issue that would void coverage.... By this motion, Plaintiff requests judgment from the court that Defendant's breach of contract voids the insurance contract *ab initio*." The motion goes on to say, some pages later, that Wasoka's actions, refusal to submit to an examination under oath and his refusal to sign a bilateral reservation of rights/nonwaiver agreement, must be viewed as "admissions of fraud in the inducement of the policy, voiding coverage *ab initio*." At all times, the motion asked the trial court to find that the policy was void for fraudulent inducement *as evidenced by Wasoka's alleged noncooperation*.

¶ 7. By the time Progressive filed the motion for summary judgment, it had deposed Wasoka under oath, exactly the result it was seeking prior to filing the declaratory judgment action. Not surprisingly, Wasoka used this deposition in filing his "Opposition to Summary Judgment" to show that, regardless of the circumstantial evidence that Progressive sought to rely on for voiding the policy, he had not, in fact, committed fraud in the inducement of the insurance policy. Wasoka devoted five full pages to why Progressive had failed to present sufficient evidence of residence fraud. He argued that he had not failed to cooperate under the terms of the contract, that Progressive had failed to produce evidence of prejudice resulting from his alleged noncooperation as is required under *Smith v. Nationwide Mutual Insurance Co.*, 2003 VT 61, ¶ 10, 175 Vt. 355, 830 A.2d 108,[3]

---

[3] In playing up the purportedly unfair aspects of the court's ruling, the dissent claims that Wasoka's responsive memorandum cited "substantial new facts and law." *Post*, ¶ 31. After reviewing Wasoka's memo and the trial court's opinion, the only "new" law we find

and that he had an absolute right to refuse an examination under oath where the purpose of the examination was to further Progressive's fraud claim against Wasoka. Wasoka asked for summary judgment in his favor pursuant to V.R.C.P. 56(c)(3).

¶ 8. Progressive did not respond to Wasoka's memorandum. On August 4, 2003, the trial court denied summary judgment for Progressive and instead granted judgment in favor of Wasoka. The trial court analyzed the issues by referencing the case that Progressive's own motion identified as the "law applicable to the present matter," *Fireman's Fund Insurance Co. v. Knutsen*, 132 Vt. 383, 324 A.2d 223 (1974), and 8 V.S.A. § 4205 cited therein. Pl.'s Mot. at 6. It concluded, based on *Fireman's Fund*, that under 8 V.S.A. § 4205 an automobile liability policy may not be voided for false statements in the application unless the insurer shows that the statements were made with actual intent to deceive or that the false statements materially affected the insurer's risk. 132 Vt. at 387-88, 324 A.2d at 227. Because Progressive had not produced evidence capable of satisfying those requirements, it was not entitled to summary judgment on its fraud in the inducement claim. Likewise, the trial court found that the policy could not be void, on the same theory, for the refusal to cooperate because Progressive had not met the prejudice standard as reaffirmed in our recent decision in *Nationwide*. See 2003 VT 61, ¶ 10 (affirming summary judgment against insurer on noncooperation claim because insurer failed to "adduce any evidence that its insured's breach placed the insurer in a substantially less favorable position than it would have been had the insured fully cooperated").

¶ 9. Progressive subsequently filed a "Motion to Vacate the Court's Opinion and Order of August 4, 2003" in which it argued that the court

cited is *Smith v. Nationwide Mutual Insurance Co.*, which, the dissent notes *post*, ¶ 35, we handed down after Progressive filed its memo. In *Smith*, we rejected an insurer's disclaimer of coverage based on the insured's refusal to cooperate with his insurer's defense of the underlying liability case at trial. 2003 VT 61, ¶ 1. In so doing, we reaffirmed our holding in *American Fidelity Co. v. Kerr* that an insurer seeking to avoid coverage based on the insured's noncooperation must demonstrate both the noncooperation and "'the actual prejudice resulting therefrom.'" *Id.* ¶ 10 (quoting *Amer. Fid. Co.*, 138 Vt. 359, 362, 416 A.2d 163, 165 (1980)); see also *id.* ¶ 22. Progressive cited and distinguished *American Fidelity* in its brief. See *infra*, ¶ 13. Moreover, as the dissent notes, Progressive has not appealed the trial court's application of *Smith* to its case as either procedurally unfair or substantively incorrect. Accordingly, we fail to see why this Court's issuance of *Smith*, after Progressive filed its motion, should factor into our analysis of whether Progressive was entitled, as a matter of law, to thirty days to respond to Wasoka's memo.

had committed a "procedural impossib[ility]" in ruling against Progressive on the issue of fraud, an issue it claimed it did not raise.[4] No additional documents were attached to this motion. The trial court denied the motion in September 2003. Towards the end of September 2003, nearly two months after the summary judgment order, Progressive filed a "Motion for Reconsideration or Clarification and Submission of Counsel's Affidavit Regarding the Subjective Intent of Counsel in Filing Summary Judgment Motion." There, Progressive argued it was entitled to relief pursuant to V.R.C.P. 60(b)(1) as the attached affidavit of Progressive's counsel stated that it was not her subjective intent to raise the issue of residency fraud in her motion. The court also denied this motion on two grounds: (1) Progressive's summary judgment motion did not state it was seeking partial summary judgment on only one aspect of its claim for declaratory relief, and (2) the subjective intent of Progressive's counsel did not trump the objective language of the motion including the motion's closing sentences which read: "In the present matter, Defendant's failure to allow Progressive to investigate the fraud must be viewed as circumstantial evidence of fraud, as well as a clear breach of contract. Thus, Mr. Wasoka's policy should be void *ab initio*." This appeal followed.

¶ 10. Progressive's claims on appeal are (1) that the trial court erred in granting summary judgment in favor of Wasoka because failure to cooperate, not residence fraud, was the basis of Progressive's motion, (2) the trial court abused its discretion in denying Progressive's motions to vacate and/or for relief from judgment, and (3) the trial court should have given Progressive an opportunity to brief the issue of prejudice before it ruled.

---

[4] Vermont Rule of Civil Procedure 56(c)(3) states in pertinent part that

> [j]udgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements required by Rule 56(c)(2), show that there is no genuine issue as to any material fact and that *any party is entitled to judgment as a matter of law.*

(Emphasis added.) In its post-judgment motion to vacate the court's opinion, Progressive acknowledged V.R.C.P. 56(c)(3) as the procedural source of the court's authority to rule against it, recognizing no less than four times that Wasoka's response was not a "separate motion for summary judgment." Progressive protests that V.R.C.P. 56(c)(3) does not, however, provide the court with the authority to decide, sua sponte, an issue that Progressive did not raise. We express no opinion here on sua sponte summary judgment under the rule because we reject Progressive's claim that its motion did not raise the issue of residency fraud in the inducement.

## I.

¶ 11. Progressive's first claim is that the trial court committed an impossibility in ruling on an issue that was not before it. It claims it moved for summary judgment on the issue of whether Wasoka's failure to cooperate voided the policy for fraud in the inducement, and that this was a separate legal claim from whether Wasoka had made misrepresentations about his residence to obtain an insurance policy, which was conduct that also amounted to fraud in the inducement. In other words, Progressive had the same legal claim, fraudulent inducement, supported by different pieces of evidence. It wanted the trial court to consider only one piece of circumstantial evidence, and disregard later evidence, to reach the same legal conclusion that the policy was void for fraud in the inducement.

¶ 12. Progressive relied on *Fireman's Fund*, 132 Vt. at 387-88, 324 A.2d at 227, as the law governing its motion for summary judgment. In that case, we held that an insurance contract may be void ab initio[5] due to fraud in the inducement of a policy, and that failure to comply with an investigation of fraud may be circumstantial evidence of fraud. See *Fireman's Fund*, 132 Vt. at 388, 324 A.2d at 227 ("[P]ositive proof of fraudulent misrepresentation is seldom to be had, and the law will allow consideration of a wide range of circumstantial evidence. . . . so long as that evidence . . . contributes something to the establishment of a rational basis for inferring the ultimate fact."). The language of Progressive's motion belies its appellate claim that its argument on noncooperation was not linked to its broader theory of fraud in the inducement.

> Plaintiff Progressive moves for summary judgment on the grounds that Mr. Wasoka's acknowledged contractual breach — his failure to submit to an examination under oath — voids the insurance contract *ab initio* since an examination under oath is a condition precedent to coverage. *Further, Progressive moves for summary judgment on the grounds that Mr. Wasoka's two breaches of duty, his refusal to submit to an examination under oath and his extended refusal to sign a bilateral reservation of rights/non-waiver agreement must*

---

[5] Black's Law Dictionary defines "void ab initio" as "[n]ull from the beginning, as from the first moment when a contract is entered into." Black's Law Dictionary 1568 (7th ed. 1999).

*be viewed as admissions of fraud in the inducement of the policy, voiding the coverage ab initio.*

Pl.'s Mot. & Mem. at 5 (emphasis added).[6]

¶ 13. Although we have also held that an insurer may avoid its coverage obligations because of an insured's failure to cooperate if the insured's noncooperation actually prejudices the insurer's defense of the underlying claim, see *American Fidelity Co. v. Kerr*, 138 Vt. 359, 362, 416 A.2d 163, 165 (1980), Progressive. states that this rule is "inapplicable" to its summary judgment motion.

¶ 14. Progressive tried to distinguish *Nationwide* by claiming it was not seeking summary judgment on whether Wasoka cooperated with the underlying claim investigation, i.e., the accident for which he was seeking coverage. Indeed, it could not, because Wasoka had submitted to an interview on that subject. It limited its noncooperation claim to Wasoka's failure to submit to an examination under oath, claiming that this amounted to circumstantial evidence of fraud under *Fireman's Fund*. Progressive's motion stated that defendant "deliberately breached a policy provision that would have enabled his insurer to investigate the issue of fraud in the inducement of the policy, a legal issue that would void coverage."

¶ 15. One of the difficulties with Progressive's motion is that, by the time it had filed the motion, it had had the opportunity to investigate its fraud claim by taking Wasoka's deposition. Thus, when the case came to the trial judge, many facts had been developed and Progressive was in a far different position from the point, some months earlier, when Wasoka had not responded to its request for an interview under oath. After Wasoka submitted to deposition, the significance of the inference that the trial court might draw from Wasoka's previous

---

[6] The dissent quotes selectively from Progressive's motion, avoiding passages like the one above, and claims that Progressive's "actual argument" was that "failure to cooperate should have the same remedy as fraud in the inducement." *Post*, ¶ 34. The dissent claims that "[w]hen read in context, all of Progressive's references to fraud in the inducement relate to the need for a similar remedy and not to a claim of fraud in the inducement in this case." *Id.* The passage cited above, and Progressive's reliance on *Fireman's Fund*, does not support the dissent's claim. Progressive sought the *same* remedy — voiding the policy ab initio — for the same wrong — fraud in the inducement. Under *Fireman's Fund*, Progressive sought to prove the fraud with circumstantial evidence in the form of Wasoka's noncooperation with yet another interview, under oath, at which Progressive could have pursued the issue of residency fraud. While *Fireman's Fund* provides two different ways to prove the claim, either by direct evidence or circumstantial evidence, it does not provide for two different claims. 132 Vt. at 388, 324 A.2d at 227.

failure to cooperate as evidence of fraud disappeared; the court had before it the direct evidence on the issue of residency fraud that Progressive claimed it was being deprived of because of Wasoka's earlier noncooperation. If we take Progressive's argument on appeal to its logical conclusion, it is essentially claiming that it was error for the trial court not to artificially halt the case at the point of Wasoka's earlier refusal and void coverage for fraudulent inducement based on the circumstantial evidence of noncooperation.

¶ 16. Progressive argues nevertheless that Wasoka, in defending against the legal issue of fraudulent inducement, raised a new issue to which Progressive was entitled to thirty days to respond. Instead, the trial court reached a decision after nineteen days. Progressive did not respond to Wasoka's opposition to its motion, so the trial court reached a decision on Progressive's original papers and Wasoka's response.[7]

¶ 17. Wasoka's response to summary judgment was wholly within the bounds of the legal issue raised by Progressive. Wasoka argued

---

[7] The dissent protests that Wasoka's introduction of "substantial new facts" with his filing required the court to provide Progressive thirty days to respond to the new information. What Wasoka filed was hardly "new." Wasoka's statement of additional uncontested material facts included four items. Of these, ¶¶ 19 and 21 were verbatim quotations from Wasoka's insurance policy with Progressive. Pl.'s Mot. & Mem. at 4. Similarly, the information contained in additional fact ¶ 22 was derived from Wasoka's deposition. Progressive's own statement of uncontested facts drew heavily upon the same deposition, and pages of it were attached as an exhibit to its motion; therefore, this too cannot be considered new information as far as Progressive was concerned. The final piece of "new information" Wasoka included was drawn from Progressive's own response to Wasoka's interrogatory, which indicated that Wasoka's "[a]pplication [was] purchased by phone." This is plainly not new information because it was all known by and available to Progressive at the time it filed its motion. It was, however, information that was omitted by Progressive.

Moreover, the dissent claims that material facts going towards Wasoka's residency were not "covered in Progressive's filings that accompanied its summary judgment motion." *Post,* ¶ 41. To the contrary, Progressive material facts ¶¶ 6, 7, 9, 10, 11, and 12 all go to the issue of his residency by demonstrating the significant ties that he had to Connecticut prior to purchasing, and during the pendency of, the insurance coverage. Furthermore, Progressive filed a transcript of Wasoka's second recorded interview as its exhibit 5. The entire content of this interview deals with (1) where Wasoka lived and worked, (2) when he lived and worked at those various places, and (3) the details of the interactions between Wasoka and the insurance agent who sold him the policy. This information is relevant because the substantive fraud claim underlying Progressive's noncooperation allegations is that Wasoka lied about where he was living and working when he purchased the policy. Progressive claimed it was entitled to an inference of fraud because Wasoka refused to come to the interview under oath to discuss these matters.

the contract was not void for fraudulent inducement because all of the circumstances of his residence had been made known to plaintiff's agent, Shortle. He also argued that Progressive was required to show prejudice in a noncooperation case and that judgment could not be had on his failure to submit to an examination under oath because no prejudice was shown under *Nationwide*. Thus, when Wasoka pleaded facts that responded to the inference of residence fraud created by the circumstantial evidence of noncooperation, he was hardly raising a new or different legal issue. He pointed to evidence that he believed overcame Progressive's evidence, and challenged Progressive's idea that the prejudice requirement did not apply because of the manner in which it had framed the legal issue.

¶ 18. It strains credulity that Progressive could have been surprised by the trial court's decision. Under the law Progressive relied upon, *Fireman's Fund*, Progressive was entitled to show fraud in the inducement of the policy in different ways, with different pieces of evidence, and to try to convince the trial court to adopt the idea that prejudice was not relevant to its claim of noncooperation with an investigation of fraud. But proving the same legal claim in two different ways does not equal two different legal claims. At all times, Progressive had one legal claim — fraudulent inducement of the insurance policy by residency fraud. It was not entitled to artificially limit the trial court's consideration to only a part of the evidence that bore on the claim.

¶ 19. As the trial court's decision illuminates, it addressed the legal issue raised — fraudulent inducement. The totality of the evidence demonstrated that Progressive had no claim for fraudulent inducement under any theory, a conclusion Progressive does not challenge on appeal. Instead, Progressive chooses to cling exclusively to the notion that the trial court made a procedural mistake in not giving it thirty days to respond to the additional facts pled by Wasoka on the legal issue Progressive had asked the court to decide. There was no error.[8]

---

[8] By creating the specter that this opinion will work major changes in summary judgment law, the dissent attempts to obscure the fact that, as is often the case, Wasoka's response was limited to issues raised by Progressive's own motion. Despite any reliance that the trial court may have placed upon timetables in V.R.C.P. 78, our decision on this issue applies existing summary judgment law and does not intend or warrant any changes to it. As we have pointed out, the dissent's procedural argument relies on its assertion that Wasoka's memorandum and motion raised "new" issues supported by

## II.

¶ 20. Despite two subsequent requests for relief in the trial court over a period of two months, Progressive has failed to show it was prejudiced by the trial court's interpretation of its motion.[9] Progressive has consistently failed to present any additional evidence it would have brought forward had it known the trial court was considering summary judgment against it on this issue. It is a long-established rule in this state that for an error to be reversed the appellant must show how the error genuinely harmed the prosecution of its case. See *Crawford v. State Highway Bd.*, 130 Vt. 18, 25, 285 A.2d 760, 764 (1971) (where the party against whom an error was committed has not been prejudiced by it, the judgment will not be reversed for such error); *In re M.B.*, 147 Vt. 41, 44, 509 A.2d 1014, 1016 (1986) (same); V.R.C.P. 61 ("[N]o error or defect in any ruling or order ... is ground for ... vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.").

¶ 21. Specifically in the context of summary judgment, the Second Circuit has held that "when the moving party cannot plausibly claim that, had it been given notice of the district court's consideration of summary judgment against it, it would have brought forth additional evidence, the district court's failure to give notice is harmless and a remand is futile." *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 140 (2d Cir. 2000). Here, the trial court rendered judgment on the legal issue presented. Progressive has consistently failed to show it was prejudiced by this ruling. Progressive's assertion of procedural error in this case is analogous to the moving party's claim in *Bridgeway* that the

"new" facts. Neither the issues, nor the facts submitted, were new to Progressive, and in such a case we cannot agree with the dissent's assertion that V.R.C.P. 56(c)(1) automatically affords the original moving party thirty days to respond. While it may be a good idea to clarify the rules of summary judgment, no such clarification is needed to resolve cases like this one.

[9] We do not agree with the dissent's assertion that our harmless error analysis in this case creates a new procedural requirement for parties against whom summary judgment is granted. We agree that our rules impose no duty to make post-judgment filings prior to appeal. Nonetheless, we cannot ignore the fact that Progressive chose to make such filings in this case, having as its only support counsel's affirmations about her subjective intent in drafting and filing the motion. By filing these motions, Progressive created its own opportunity to expand the record on appeal — an opportunity that it has squandered by failing to demonstrate, with properly supported facts, that it was truly prejudiced by the trial court's ruling on the summary judgment motion. *Infra*, ¶¶ 24-25.

court wrongly awarded summary judgment against it without notice. There the Second Circuit held that a remand was useless because the moving party presented no additional evidence it would have brought forward had it known summary judgment was being considered against it. *Id.* at 140. Similarly, assuming arguendo that the trial court erred by granting summary judgment after nineteen days instead of waiting thirty days for any Progressive reply, remanding now would unnecessarily waste judicial resources. Despite multiple post-judgment opportunities to present any additional evidence it would have brought forward if it had been given the full thirty days it believes it had to reply, Progressive has consistently failed to do so.

¶ 22. Five pages of Wasoka's responsive memorandum are devoted to a defense of residency fraud. Had Progressive replied to Wasoka's memorandum in opposition, it could have, and should have, brought forward any additional evidence it had of fraud at that time.[10] Even though Progressive failed to reply to Wasoka's memorandum after nineteen days, Progressive still could have presented additional evidence of the alleged fraud in either its "Motion to Vacate" dated August 8, 2003, or its "Motion for Reconsideration or Clarification" dated September 29, 2003. In these motions, however, Progressive makes only vague, unsupported assertions of additional facts of fraud.

¶ 23. In its motion to vacate, Progressive states, "the evidence available from the insurance agent does not match that provided by Mr. Wasoka." This assertion finds no support in any documentation. In its "Motion for Reconsideration or Clarification" filed almost two months later, Progressive asserts, "[t]here are significant factual disputes regarding the issue of fraud in the inducement of the policy, and if given an opportunity by the Court, Plaintiff can present these facts." Again, this is a bare assertion unsupported by any specific evidence appropriate for a court deciding summary judgment.

¶ 24. On appeal, Progressive points to the conspicuous lack of an affidavit by its agent as support for its position that it did not intend to

---

[10] Progressive did not argue before the trial court that it was working on a response to Wasoka's memorandum when the court ruled on Progressive's motion, nor did it assert that it intended to respond to Wasoka's memorandum. Although Progressive claimed in oral argument that it intended to reply, it failed to make this assertion below in either of its two motions subsequent to the trial court's summary judgment ruling. Thus, we decline to consider it here. See *Spencer v. Killington, Ltd.*, 167 Vt. 137, 140, 702 A.2d 35, 36 (1997) ("[W]e will not reverse a lower court when a party's failure to raise some matter below denied the court an opportunity to consider it.") (quotations omitted).

raise the issue of residency fraud on summary judgment. This argument is without merit. In light of the fact that Progressive presumably had easy access to its own agent, we see no reason why Shortle's affidavit would not have been submitted in either of Progressive's subsequent requests for relief had it been of material use to Progressive's case. This is especially true where "the evidence available from the insurance agent" is directly referenced in Progressive's motion to vacate. Furthermore, as an issue of judicial efficiency, Progressive should have submitted this affidavit, and any other documentation it had of Wasoka's alleged fraud, to the trial court when the case was still before that court. Progressive cannot credibly contend that the trial court made a mistake based on a lack of evidence when Progressive did not submit the very evidence the trial court would need to correct its alleged mistake.

¶ 25. It is a basic principle of summary judgment that mere allegations of counsel unsupported by documented evidence are not enough to create a genuine issue of material fact. See *Foster & Gridley v. Winner*, 169 Vt. 621, 624, 740 A.2d 1283, 1286 (1999) (mem.) (defendant's unsupported allegations are insufficient to create a genuine issue of material fact); *Kelly v. Town of Barnard*, 155 Vt. 296, 299, 583 A.2d 614, 616 (1990) (trial court may enter judgment against a party who makes mere allegations and denials, and who fails to set forth specific facts to show the existence of a genuine issue for trial); see also 10B C. Wright, et al., Federal Practice and Procedure § 2738, at 356 (3d ed. 1998) ("[M]ere reargument of a party's case or the denial of an opponent's allegations will be disregarded [in the consideration of summary judgment]."). By relying entirely on an affidavit of its attorney's subjective intent, Progressive has apparently sought to direct this Court's attention away from the fact that Progressive was not genuinely prejudiced by the trial court's interpretation of its motion. There is no reason to remand this case to grant Progressive even more time to present evidence of residency fraud when, after multiple opportunities over more than two months, Progressive has already failed to do so.

### III.

¶ 26. Additionally, the trial court did not abuse its discretion in denying both Progressive's motion to vacate and its Rule 60(b) "Motion for Reconsideration or Clarification." Having decided that the trial court reasonably interpreted Progressive's motion as raising the issue of residency fraud, and having already discussed Progressive's

lack of substantive evidence in support of its assertions of error, we affirm the trial court's denial of the motion to vacate. As to Progressive's Rule 60(b) motion, "[t]he decision on a Rule 60(b) motion is committed to the sound discretion of the trial court and will stand on review unless the record clearly and affirmatively indicates that such discretion was withheld or otherwise abused." *Bingham v. Tenney*, 154 Vt. 96, 99, 573 A.2d 1185, 1186 (1990). The burden is on the party challenging the denial to demonstrate an abuse of discretion. *Id.* Here, Progressive fails to show an abuse of discretion.

¶ 27. Progressive again relies solely on its affidavit of counsel in support of its claim that it is entitled to relief based on "mistake, inadvertence, surprise, or excusable neglect" pursuant to V.R.C.P. 60(b)(1). An award of Rule 60(b) relief in this case based solely on the stated subjective intent of counsel would be inconsistent with our case law. In the context of Vermont Rule of Civil Procedure 68 offers, we have held that "objective intent" controls and that no relief pursuant to Rule 60(b) is warranted based on an attorney's stated subjective intent behind an offer. *Rule v. Tobin*, 168 Vt. 166, 174, 719 A.2d 869, 874 (1998) (citing *Webb v. James*, 172 F.R.D. 311, 316 (N.D. Ill. 1997)). This case is analogous to those in which attorneys have argued, after the fact, for a different interpretation of a Rule 68 offer based on their subjective intent. In relying entirely on counsel's sworn statement of her intent, Progressive's Rule 60(b) motion failed to articulate a ground upon which relief can be granted. Accordingly, we find no abuse of discretion in the court's decision to deny it.

¶ 28. Progressive's appeal does not challenge the trial court's grant of summary judgment on the merits. Instead it focuses exclusively on what it perceives as procedural defects of the trial court's rulings. In light of our rejection of Progressive's procedural arguments, we affirm the trial court's grant of summary judgment without discussion of the merits. See *Rowe v. Brown*, 157 Vt. 373, 379, 599 A.2d 333, 337 (1991) ("Issues not raised on appeal are deemed waived.").

*Affirmed.*

¶ 29. **Dooley, J.,** dissenting. Since Progressive Insurance Company's argument to this Court is based on its claim that it never made a summary judgment motion based on fraudulent inducement, Progressive will immediately capture the thrust of the majority's opinion from the opening sentence: "Progressive Insurance Company appeals from a denial of its motion for summary judgment against its insured, Gregory Wasoka, for fraud in the inducement of

an automobile insurance policy." *Ante*, ¶ 1. I believe the opening sentence is symptomatic of the short shrift that the Court's decision has given to Progressive's action and arguments, and cannot sub-scribe to it. Accordingly, I dissent.

¶ 30. The main issue in this case was whether Progressive was enti-tled to thirty days to answer its insured's response to Progressive's motion for summary judgment, hardly an earth shattering issue. In this case, however, the majority has upheld what is de facto a default judgment against Progressive. In doing so, it has denied the thirty days to respond by torturing the language of Progressive's motion for summary judgment to find in it a frivolous and unsupported summary judgment claim that its insured fraudulently induced Progressive to issue the policy by misrepresenting the state of his residency. Any appearance of fairness is further undercut by the trial court's accep-tance of Wasoka's response to the summary judgment motion six months after it was filed, when Rule of Civil Procedure 56(c)(1) normally requires that it be filed within thirty days, while denying Progressive even a thirty-day response period. I believe that in cases of serious doubt — and this is at least such a case — we should err on the side of giving every litigant, including an insurance company, an opportunity to present its case on the merits — that is, its day in court. I doubt we would endorse denying that right in this case if the trial court had entered judgment for an insurance company, and we should not do so when the situation is reversed.

¶ 31. Underlying this case, there is a serious question about sum-mary judgment motion procedure. Rule 56(c)(1) gives a party up to thirty days to respond to a motion for summary judgment, but specifies no time limit, and gives no authorization for a rebuttal response by the moving party. Our general motion rule, V.R.C.P. 78(b)(1), also contains no authorization for, and gives no time limit for, a rebuttal response.[11] The trial court has defaulted Progressive for failing to file a rebuttal to Wasoka's response "despite having ap-

---

[11] Wasoka argued below that Rule 78(b)(1) imposed a deadline of ten days to respond to his motion and evidentiary material. That rule gives the maker of a motion ten days to respond to a memorandum filed by the opponent. This language is plainly inapplicable to the situation before us. Progressive's need to respond was not triggered by Wasoka's memorandum, but instead by the new facts that Wasoka asserted were undisputed and the extensive additional evidentiary material he submitted. Moreover, although we have not clearly decided this question, the procedures for summary judgment motions appear to be governed by Rule 56 and not Rule 78.

proximately three full weeks to do so," apparently believing that Progressive's counsel should have known that it had to file a response and three weeks exceeded whatever deadline the court had in mind. As I stated above, this came in a case where the court had just allowed Wasoka six months to respond to the original motion. Even if I agreed with the majority on the main issue of the case, I would hold that Progressive should have been given at least thirty days to respond because it was responding to substantial new facts and law. I also believe that we should refer this issue to the rules committee so this kind of case does not arise again. No system based on a trial judge's power to disclose a deadline after the fact to default a party will appear fair.

¶ 32. My main difference with the majority is over its conclusion that Progressive's motion for summary judgment was based on a theory of fraud in the inducement. Progressive's complaint raises two distinct reasons why it was not required to pay Wasoka's claim: "Mr. Wasoka's insurance policy ... is void ab initio due to his fraudulent representations" and "there is no coverage under [the] ... policy for any claims ... due to Mr. Wasoka's failure to cooperate with Progressive."[12] The latter reason is explained in the complaint: "Mr. Wasoka has failed to cooperate with Progressive by, among other things, refusing to respond to Progressive's requests for additional information and its request for his examination and oath."

¶ 33. Progressive filed for summary judgment only on its second ground for not paying Wasoka's insurance claim — that Wasoka breached the terms of the insurance policy by failing to cooperate with Progressive and submit to an examination under oath as required in the policy. This is explained in one of the opening paragraphs of the motion:

> The present matter is an insurance coverage case where Defendant deliberately breached a policy provision that would have enabled his insurer to investigate the issue of fraud in the inducement of the policy, a legal issue that would void coverage. *Fireman's Fund Ins. Co. v. Knutsen*, 132 Vt. 383 (1974). By this motion, Plaintiff requests judgment from the court that Defendant's breach of contract voids the insurance contract *ab initio*.

---

[12] There was also a third reason that Wasoka made misrepresentations in the course of presenting his claim, but that is not relevant to the issue before us.

On page 3, the motion states, "[t]he subject motion is based on Mr. Wasoka's breach of policy for failure to submit to an examination under oath," and later, "the subject motion is based on Mr. Wasoka's breach of contract and failure to cooperate with Progressive's legitimate investigation regarding the issue of residency." These and similar statements appear at least six times in the motion.

¶ 34. The majority concludes, however, that despite this language in the motion, other language, and the cases cited, show that Progressive was actually relying on a form of fraud in the inducement. The majority fails to distinguish between Progressive's actual argument — that failure to cooperate should have the same remedy as fraud in the inducement — and its characterization of the argument — that Progressive alleged fraud in the inducement. Thus, in its conclusion, Progressive argued from *Fireman's Fund* that in matters of fraud in the inducement a showing of intent to deceive is unnecessary because "[i]t would be consistent for the Vermont Supreme Court to find that an insured's failure to submit to an examination under oath, the tool of an insurer to investigate issues of fraud, should void coverage." When read in context, all of Progressive's references to fraud in the inducement relate to the need for a similar remedy and not to a claim of fraud in the inducement in this case.

¶ 35. Much of the majority's analysis relates to the weakness of Progressive's argument in its motion for summary judgment and that the cases relied upon were mainly fraud in the inducement cases. Progressive has not appealed the denial of the motion for summary judgment on the merits, and I agree that it should have been denied on the merits of what it presented. I particularly agree that *Fireman's Fund Insurance Co. v. Knutsen* offered no support for an argument that a policy should be void if the insured fails to cooperate by refusing to submit to an examination under oath. As the majority, the trial court and Wasoka emphasized, the force of Progressive's legal arguments were greatly undermined by this Court's decision in *Smith v. Nationwide Mutual Insurance Co.*, 2003 VT 61, 175 Vt. 355, 830 A.2d 108, a decision issued after Progressive filed its motion for summary judgment and memorandum of law. But all of this is beside the point in this appeal. Weakness in the claim Progressive made does not somehow turn it into a different claim, as the majority finds.

¶ 36. Because I believe that this case represents a trap for the unwary and so much of the disagreement over it depends on the characterization of the motion Progressive made, I have attached Progressive's motion for summary judgment at the end of this dissent.

Contrary to the majority's apparent view, this should not be an exercise in trying to find words that support the outcome that Progressive made a motion that Progressive asserts it did not make, but instead in reading the motion overall to determine fairly what were the grounds for its summary judgment motion. The reader can decide which characterization of it is more accurate and whether, as the majority claims, I have quoted "selectively" from it.

¶ 37. I am also persuaded by another very important factor in this case, one ignored by the majority. If Progressive made a motion for summary judgment based on fraud in the inducement, that motion was utterly frivolous. No fact in Progressive's statement of undisputed facts went to fraud in the inducement.[13] See V.R.C.P. 56(c)(2) (requiring movant to attach statement of the "material facts" it claims are undisputed). Put more directly, none of the facts went to the "inducement" of Progressive to write the policy on July 23, 2000 and, other

---

[13] The majority says that six of the paragraphs "go to the issue of his residency by demonstrating the significant ties that he had to Connecticut prior to purchasing, and during the pendency of, the insurance coverage." *Ante*, n.7. In fact, all of the paragraphs describe events at the time of the accident, nine months after the policy was purchased, or during the investigation of the accident and coverage and culminate. For example:

¶ 12. Following the second recorded interview, Progressive had reason to believe that Mr. Wasoka was a Connecticut resident when he purchased the Vermont automobile insurance policy. Progressive suspected fraud in the inducement of the policy.

The factual paragraphs do not relate to "the significant ties that he had to Connecticut prior to purchasing . . . the insurance coverage," as the majority states. *Ante*, n.7. Unless we are prepared to hold that an insurer's suspicion of fraud in the inducement means that such fraud exists and voids the policy, another frivolous argument, the statement of undisputed facts offers no support to a fraud-in-the-inducement argument.

The majority also states that Progressive attached as exhibit 5 to its statement of undisputed facts the second recorded interview of Wasoka, taken on May 22, 2001 after the accident, to show that Wasoka fraudulently induced Progressive to sell him the policy by misrepresenting his residency as Vermont. Progressive included three "undisputed facts" from the exhibit in ¶¶ 8, 9, 10: (1) that an employee of Progressive interviewed Wasoka; (2) that during the interview "Wasoka was still at his parent's home in Connecticut"; and (3) that during the interview "Wasoka stated that he was currently working at Gary Industries, a business in Connecticut." Progressive never cited exhibit 5 as supporting a fraud-in-the-inducement argument in its motion or memorandum of law, Wasoka ignored it in his response, and the trial court never used it in its summary judgment decision. The "facts" in the exhibit were never properly before the superior court for its decision. See *Travelers Ins. Cos. v. Demarle, Inc.*, 2005 VT 53, ¶ 9, 178 Vt. 570, 878 A.2d 267 (mem.) (excluding evidence not included in statement of disputed facts from court's evaluation of summary judgment).

than the statement that plaintiff purchased the policy on that date, all facts described events that occurred after that date and could not have involved inducement for writing the policy. All of the other material attached to the motion went to Wasoka's failure to cooperate in giving a statement under oath or to enter into a reservation-of-rights agreement.

¶ 38. The frivolous nature of the argument the majority claims Progressive made is obvious from the majority's constant description of that argument. Thus, the majority says in a number of places that Progressive argued that Wasoka committed "fraud in the inducement as evidenced by Wasoka's noncooperation." *Ante*, ¶¶ 1, 6. If that sentence appeared in any other context than this opinion, one would wonder if it were a mistake since the alleged "noncooperation" occurred over a year after the "inducement" of Progressive to issue the policy. In his response, Wasoka seized on this point arguing in support of his position that Progressive had produced no evidence in support of a claim of fraud in the inducement:

> Defendant Gregory Wasoka submits that Plaintiff's Motion for Summary Judgment, does not present *any evidence* of the following:
> (1) evidence of an insurance application;
> (2) evidence of any misrepresentation made to the insurance agent;
> (3) evidence of an alleged misrepresentation that was material to liability coverage;
> (4) evidence that defendant Wasoka's intent was anything other than to insure himself in the State of Vermont *at the time* of the insurance "application"; or
> (5) evidence that coverage under the policy required Vermont residency.

Wasoka was right. Progressive's motion and supporting material did not go to any of the elements of fraud in the inducement. Where there is a dispute over the meaning and intent of a motion, construing it in a way to make it frivolous is wrong, particularly where the effect of that construction is to default it from ever having the opportunity to present the main claim in its complaint.

¶ 39. This returns us to what is in issue as a result of the characterization of Progressive's summary judgment motion. Because fraud in

the inducement as a result of Wasoka's residency was not raised in Progressive's motion, it was raised for the first time by Wasoka.[14] As a result, Wasoka was the movant on this issue, and Progressive was entitled to thirty days to respond as the nonmovant. V.R.C.P. 56(c)(1). The court erred by not affording Progressive this response time and, consequently, Progressive was prejudiced because it never had an opportunity to submit facts pertaining to the residency issue.

¶ 40. While we have not addressed this procedural issue directly, our decisions are fully consistent with this result. We have demanded that if the trial court enters summary judgment sua sponte it must provide the opposing party with an opportunity to respond. *Kelly v. Town of Barnard,* 155 Vt. 296, 306, 583 A.2d 614, 620 (1990) ("In Vermont, before the court can grant summary judgment, it must give the opposing party a reasonable opportunity to show the existence of a fact question." (quotations omitted)). Similarly, we "recognize[d] the general rule that summary judgment should not be granted on an issue not raised in the summary judgment motion unless the party against whom summary judgment is granted is given full and fair notice and opportunity to respond to the issue prior to the entry of summary judgment." *State v. Therrien,* 2003 VT 44, ¶ 23 n.3, 175 Vt. 342, 830 A.2d 28. Other jurisdictions have held that where a new legal issue is raised in a cross-motion for summary judgment, the original movant becomes the adverse party on the issue and is entitled to a thirty-day response time as set out in Rule 56. See *Hill v. Chambless,*

---

[14] In footnote 4, the majority claims that Progressive conceded in its motion to vacate that Wasoka's response was not a separate motion for summary judgment. What Progressive said over and over again is that it never raised fraud in the inducement in its summary judgment motion and, therefore, the court could not find summary judgment against it on that theory absent a separate summary judgment motion from Wasoka. It added that the Wasoka response could not be construed as a separate motion so summary judgment could not be entered against it and that, if Wasoka's motion was construed as a separate motion for summary judgment, it was denied thirty days to respond to the motion.

The majority wants to hold Progressive to its position that Wasoka never filed for summary judgment, while rejecting its underlying condition that Progressive never filed for summary judgment on fraud in the inducement. If Progressive never moved for summary judgment on a theory of fraud in the inducement, it makes little difference if the error is characterized as granting summary judgment on a ground never raised by the movant, or granting summary judgment on a new theory raised by the motion-opponent without sufficient time for the movant to respond. Under either characterization, Progressive improperly suffered a de facto default judgment on the merits of its case.

757 So. 2d 409, 411 (Ala. 2000) (reversing for failure to provide full response time); *In re Persons*, 311 N.W.2d 919, 923 (N.D. 1981) (reversing dismissal where opposing party was not accorded full response time). Using the similar Federal Rule of Civil Procedure 56, the federal courts agree that when a party requests summary judgment on a new legal issue, the opposing party is entitled to a renewed response time. See, e.g., *Burns v. Gadsden State Cmty. Coll.*, 908 F.2d 1512, 1516 (11th Cir. 1990) (reversing for failure to provide response time); *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 410 (1st Cir. 1985) (explaining that party should have opportunity to respond); *Russell v. Atlas Van Lines, Inc.*, 411 F. Supp. 111, 115 (E.D. Okla. 1976) (providing party time to respond before it ruled on summary judgment motion).

¶ 41. Even if I accepted that Progressive had raised fraud in the inducement in its complaint, I would hold that Progressive was entitled to thirty days to respond to Wasoka's motion. Under the majority's analysis, this has turned into a form of "magic words" case. That is, the majority has held that if the summary judgment movant raises some form of "fraud in the inducement" by using those words somewhere in its motion, the opposing party is entitled to raise anything with respect to fraud in the inducement without giving the original moving party the right to reply as a nonmovant. This holding distorts the procedure called for in the rules. Here Wasoka responded with additional uncontested material facts going to his residency at the time of the issuance of the policy and extensive discovery materials on this issue. None of this was covered in Progressive's filings that accompanied its summary judgment motion.

¶ 42. Wasoka submitted additional new facts in support of a cross-motion for summary judgment. Irrespective of whether the issue was covered in Progressive's original motion, Rule 56(c)(1) applies by its terms to give Progressive thirty days to respond to Wasoka's motion. Indeed, this is the only logical reading of the rule because it does not provide for rebuttal and would not otherwise require Progressive to submit its own version of undisputed facts in response to those raised by Wasoka. See V.R.C.P. 56(c)(2). To hold that the evidence narrowing requirements of Rule 56(c)(2) do not extend to new facts raised by the original opponent greatly undercuts this procedure in a case where the incantation of the magic words was found to be enough to start the process.

¶ 43. The majority responds that the facts were not new to Progressive, and that is all that counts.[15] It is irrelevant whether the facts were new to Progressive; they were new to the court and, in this "magic words" case, went in an entirely different direction from Progressive's filings and raised questions of law that Progressive never briefed. The rule must be administered with a bright line opportunity to respond; under the majority's distinction, litigants would never know how long they had to respond.

¶ 44. Finally, I believe that the only possible remedy for the failure to accord Progressive the proper time to respond is a reversal of the summary judgment so that Progressive can respond to Wasoka's motion and filings. In reaching this conclusion, I disagree with the majority that a harmless error analysis will decide this case for Wasoka. Rule 56 grants an adverse party thirty days to present affidavits and a memorandum in response to a motion for summary judgment, and the superior court had no discretion to shorten this time limit. The court failed to honor this requirement and to issue summary judgment when it did.

¶ 45. The basic federal law, adopted by a majority of federal courts, is that noncompliance with the time provisions of the summary judgment rule deprives the trial court of authority to decide the motion. *Osbakken v. Venable*, 931 F.2d 36, 37 (10th Cir. 1991) ("It is settled law that noncompliance with the time provisions of Rule 56(c) deprives the court of authority to grant the motion for summary judgment unless the opposing party has waived this requirement."); *Winbourne v. E. Air Lines, Inc.*, 632 F.2d 219, 223, 223 n.5 (2d Cir. 1980) (citing cases and noting that while a minority of federal courts apply a harmless error analysis for failure to comply with the procedural requirements of Rule 56, the majority of courts hold that "a procedural defect vitiates the entry of summary judgment against the non-moving party"). There is a place for harmless error analysis only if the record shows that the party against whom summary judgment is issued could not have brought forward additional material facts to defeat the motion. This is the holding of *Bridgeway Corp. v. Citibank*, 201 F.3d 134 (2d Cir. 2000), a case in which the party against which summary judgment was granted had admitted in its filings that the evidence was sufficient to enable the court to decide whether to grant

---

[15] They were also known by Wasoka at the time of Progressive's motion, but he was given six months extra to present them to the superior court, while Progressive was not given thirty days to respond to them.

summary judgment on the issue it did. See *id.* at 140 ("Bridgeway repeatedly claimed to the district court that it had introduced sufficient evidence concerning that very issue."). The majority has taken *Bridgeway* a large step beyond its rationale by holding that Progressive, as the party contesting the summary judgment procedure, must demonstrate by a post-judgment filing *what it would have filed in opposition to Wasoka's motion and that it would have won the summary judgment motion.* Federal law does not impose such a requirement.

¶ 46. *Bridgeway* depends in turn on a line of Second Circuit cases that reversed summary judgment decisions because they were issued without giving the losing party a sufficient opportunity to respond. The main precedent is *Ramsey v. Coughlin,* 94 F.3d 71 (2d Cir. 1996), which developed the harmless error rule as follows:

> Where it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, a *sua sponte* grant of summary judgment against that party may be appropriate if those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law. Before granting summary judgment *sua sponte,* the district court must assure itself that following the procedures set out in Rule 56 would not alter the outcome. Discovery must either have been completed, or it must be clear that further discovery would be of no benefit. The record must, therefore, reflect the losing party's inability to enhance the evidence supporting its position and the winning party's entitlement to judgment.
>
> Appellate review of a grant of summary judgment is *de novo.* The record here, which consists solely of Ramsey's submission in support of his own motion, does not meet the test set out above. Discovery here has been concluded, but we have no way of knowing whether all pertinent materials obtained in discovery are before us. Had the procedures required by Rule 56 been used and had appellees moved for summary judgment, the state of the evidence concerning the crucial issue of appellees' personal involvement would have been clarified.

*Id.* at 74 (citations omitted). This case is in the same posture as *Ramsey*; discovery has been completed but only part of it was before

the court. Just as the *Ramsey* court reversed on that basis, without imposing on the losing party to show what was in that discovery, we must also.

¶ 47. Although we have not addressed directly the application of harmless error in a case where the trial court granted summary judgment without providing one party a sufficient opportunity to respond to the motion, we have considered cases where the trial court went outside the pleadings and converted a motion to dismiss into a motion for summary judgment without giving notice to the adverse party. Rule 12(b) requires that the court give all parties "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." V.R.C.P. 12(b). Where the trial court has granted summary judgment without complying with the notice and opportunity to respond requirement of the rule, we have routinely reversed summary judgment without requiring the losing party to show what evidence it would have submitted to the trial court. See *Bennett Estate v. Travelers Ins. Co.*, 138 Vt. 189, 191, 413 A.2d 1208, 1209 (1980) (reversing summary judgment because plaintiff was not given an opportunity to submit material after motion to dismiss was converted to a summary judgment motion); see also *Nash v. Coxon*, 152 Vt. 313, 315, 565 A.2d 1360, 1361 (1989) (same). Reflecting a similar policy, we recently reversed the dismissal of a complaint under Rule 12(b) because the losing party was not accorded the opportunity to address the grounds for dismissal and that party might have "be[en] able to amend the complaint sufficiently to state a claim entitling the plaintiff to relief." *Huminski v. Lavoie*, 173 Vt. 517, 519, 787 A.2d 489, 492 (2001) (mem.).

¶ 48. Our rules impose upon Progressive no duty to file any post-judgment motion once it was denied summary judgment. It chose to do so based on the procedural unfairness of a ruling that defaulted it on the central claim in its suit. The trial court gave no indication in response to Progressive's motion that it expected Progressive to demonstrate what facts it would have offered in response to Wasoka's motion had it been given the opportunity or that it would have considered any additional facts. Under the guise of defining Progressive's obligation to show prejudice, the majority has now created new procedural requirements to file a post-judgment motion and with that motion to file the evidentiary material that demonstrates it would have prevailed on the summary judgment motion if it had been allowed to make the filing.

¶ 49. The majority has responded that it really did not require Progressive to file any post-judgment motion, it simply held that if

Progressive filed a post-judgment motion, it cannot squander its opportunity to show prejudice by failing to demonstrate the facts it would have filed in opposition to the summary judgment against it. I believe that this response goes in the wrong direction. It says to the members of the bar that they can avoid making a bad prediction about what to put in a motion to vacate by filing no post-judgment motion and instead appealing to this Court without giving the trial court an opportunity to correct its error. We should endorse exactly the procedure Progressive used here when it brought to the superior court's attention its assertion that the court made a procedural error in defaulting it.

¶ 50. If we are to create new procedural requirements, we should do so prospectively by rule, rather than blaming a litigant for failing to meet requirements of which it had no warning. The waste of judicial resources is caused by the failure to give Progressive an opportunity to respond to Wasoka's summary judgment motion and not by the inadequacy of Progressive's attempts to emerge from the box in which it was placed. Refusal to reverse the decision to default Progressive "appears … inconsistent with substantial justice" and is not harmless error. V.R.C.P. 61.

¶ 51. In summary, we should afford Progressive its day in court on its main claim that its insured misrepresented his place of residency and that misrepresentation should void the policy. Whatever we may think about its case, it is entitled to be treated fairly and evenhandedly and pursuant to our rules. It was not treated so in this case.

## EXHIBIT 5

THIS IS AUDRA DYCKMAN SPEAKING I AM CALLING FROM TELEPHONE NUMBER 203-267-2416. I AM SPEAKING WITH GREG WASOKA AT TELEPHONE NUMBER 203-723-8038 WE ARE DISCUSSING A MOTOR VEHICLE ACCIDENT THAT OCCURRED ON MAY 9, 2001 IN NAUGATUCK CONNECTICUT. TODAY'S DATE IS MAY 22, 2001 AND THE TIME IS APPROXIMATELY 2:10

AD: GREG DO YOU UNDERSTAND THAT I AM RECORDING THIS INTERVIEW

GW: YES I DO

AD: DO I HAVE YOUR PERMISSION TO RECORD IT

GW: YES YOU DO

AD: STATE YOUR FULL NAME AND SPELL YOUR LAST NAME

GW: GREGORY A. W-A-S-O-K-A

AD: YOUR DATE OF BIRTH

GW: 11-1-79

AD: AND YOUR HOME ADDRESS

GW: KILLINGTON, VERMONT 05751, P.O. BOX 79 OR DO YOU WANT MY HOME ADDRESS

AD: I WANT YOUR PHYSICAL ADDRESS

GW: PHYSICAL ADDRESS IS KILLINGTON ROAD, MOUNTAIN GREEN APARTMENTS, APARTMENT 1B9

AD: KILLINGTON ROAD

GW: YES

AD: KILLINGTON GREEN APARTMENTS YOU SAID

GW: NO MOUNTAIN GREEN

AD: MOUNTAIN GREEN

GW: APARTMENT 1B9

AD: AND HOW LONG HAVE YOU RESIDED AT THAT ADDRESS

GW: HOW LONG SINCE UM ABOUT SEPTEMBER OF LAST YEAR

AD: SEPTEMBER OF LAST YEAR

GW: OF 2000 YES

AD: AND WHERE DID YOU LIVE PRIOR TO THAT

GW: PRIOR TO THAT I LIVED WITH MY PARENTS

AD: WHAT IS THEIR ADDRESS

GW: IN NAUGATUCK, 37 PHYLLIS DRIVE

AD: AND HOW LONG DID YOU LIVE THERE

GW: TEN YEARS

AD: AND WHO RESIDES WITH YOU AT THE MOUNTAIN GREEN APARTMENT

GW: IT'S MY BROTHERS APARTMENT IT'S A CONDO TO BE SPECIFIC IT'S A RESORT

AD: AND YOUR BROTHER OWNS IT

GW: YES MY BROTHER OWNS IT

AD: WHAT IS HIS NAME

GW: WHY DO YOU NEED TO KNOW THAT

AD: DOES HE RESIDE WITH YOU THERE

GW: I RESIDE WITH HIM THERE

AD: THEN I NEED TO KNOW OF ALL THE NAMES OF ALL THE PEOPLE WHO LIVE THERE

GW: OKAY, HIS NAME IS CHARLES DAVID WASOKA SAME SPELLING AS MY NAME WASOKA

AD: AND HOW LONG HAS HE OWNED THE CONDO

GW: A NUMBER OF YEAR NOW I AM NOT TOO SURE

AD: DID YOU MOVE UP THERE TOGETHER

GW: NO WE DIDN'T

AD: AND WE ARE YOU EMPLOYED

GW: RIGHT KNOW I AM EMPLOYED AT GARY INDUSTRIES

AD: WHAT DO YOU DO THERE

GW: A NUMBER OF THINGS

AD: SUCH AS

GW: SUCH AS

AD: DO YOU WORK A SPECIFIC DEPARTMENT

GW: NO I WORK IN THE WHOLE THING I WORK A LITTLE BIT MAINTENANCE I WORK ON THE GRINDING WHEEL, SURFACE GRINDER, BRIDGEPORT MILLING MACHINE THINGS OF THAT NATURE

AD: HOW LONG HAVE YOU WORKED THERE

GW: ON AND OFF FOR ABOUT TWO YEARS

AD: WHEN DID YOU COME BACK TO CONNECTICUT FROM VERMONT

GW: SOMETIME IN MARCH I'M NOT TO SURE OH IT WAS LIKE MARCH 29TH I GOT MY LAST PAY CHECK FROM KILLINGTON RIGHT HERE

AD: AM I TO UNDERSTAND THAT YOU WORKED AT THE KILLINGTON RESORT

GW: YES THAT'S WHY I LIVED THERE THIS FALL AND WINTER

AD: AND WHEN WILL YOU BE RETURNING TO VERMONT

GW: WHEN WILL I BE RETURNING TO VERMONT UM NEXT FALL .

AD: WHAT DO YOU DO AT THE KILLINGTON RESORT
GW: I SELL TICKETS

AD: LIFT TICKETS OR
GW: YES LIFT TICKETS

AD: OKAY, AND WHO IS YOUR SUPERVISOR THERE
GW: IT WAS RAY JOHNSON HE GOT FIRED HIS JOB IS NO LONGER THERE

AD: ABOUT WHO IS HIS SUPERVISOR
GW: UM I AM NOT SURE JERRY SOMETHING I AM NOT REALLY SURE

AD: HOW MANY YEARS HAVE YOU WORKED AT KILLING-TON PRIOR TO
GW: THIS IS MY FIRST YEAR RAY JOHNSON WAS A FRIEND OF MY BROTHER FROM THERE FROM COL-LEGE MY BROTHER LIVED IN VERMONT AROUND KILLINGTON FOR ABOUT TEN YEARS AND FINALLY I GOT THE CHANCE TO GO UP THERE AND WORK FOR A SEASON

AD: DO YOU RECEIVE MAIL UP THERE
GW: NO JUST THINGS FROM KILLINGTON JUST PAY CHECKS FROM KILLINGTON AND STUFF NOTHING THAT'S ABOUT IT

AD: AND WHEN YOU FILE YOUR TAXES WHAT ADDRESS IS ON YOUR TAX RETURN
GW: WHAT ADDRESS IS ON MY TAX RETURN

AD: YES
GW: FOR MY JOB AT GARY INDUSTRIES THIS ONE IS

AD: DO YOU HAVE TO FILE A VERMONT STATE TAX RETURN TO THEY DON'T HAVE A INCOME TAX DO THEY
GW: WHAT'S THAT NO

AD: IN VERMONT
GW: NO

AD: HOW ABOUT YOUR FEDERAL TAX RETURN WHERE DOES YOUR CHECK COME

GW: I DID IT ALL FROM HOME I HAD IT ALL SENT HERE BECAUSE MY FATHER TAKES CARE OF IT FOR ME I BRING IT TO HIM AND HE HELPS ME WITH IT

AD: WHO IS YOUR INSURANCE AGENT IN VERMONT

GW: I REALLY FORGET HIS NAME LET ME LOOK IT UP

AD: OR IF YOU REMEMBER THE NAME OF THE AGENCY

GW: OH IT'S MCCULLOUGH INSURANCE IT'S IN KILLINGTON

AD: OKAY, AND WHERE YOU DID YOU HAVE AUTO INSURANCE ON THE VEHICLE THE FORD EXPLORER PRIOR TO OBTAINING PROGRESSIVE

GW: YES

AD: WHO WERE YOU INSURED WITH

GW: SAFECO

AD: AND WHO WAS YOUR AGENT ON THAT POLICY DO YOU KNOW

GW: NO I DON'T

AD: WAS THAT A CONNECTICUT POLICY OR VERMONT POLICY

GW: IT WAS CONNECTICUT WHEN I SWITCHED TO VERMONT I SWITCHED TO PROGRESSIVE BECAUSE MY BROTHER HAS THIS AGENT SO I USED MY BROTHERS

AD: HOW LONG WERE YOU INSURED WITH SAFECO DO YOU REMEMBER

GW: A COUPLE OF YEARS, WHY DOES THAT MATTER

AD: AND

GW: WHY, WHY DOES THAT MATTER

AD: JUST TRYING TO VERIFY WHO YOUR PRIOR INSURANCE WAS SAME REASON WHY ASKED YOU WHERE YOU LIVED PRIOR TO KILLINGTON THE MOUNTAIN GREEN APARTMENT EXCUSE ME YOU INTERRUPTED ME SO I LOST MY TRAIN OF THOUGHT

GW: YES

AD: DO YOU KNOW WHEN YOUR REGISTRATION EXPIRES ON THE EXPLORER

GW: IT'S NOT AN EXPLORER

AD: THE FORD RANGER

GW: YES IT EXPIRES SOMETIME IN JULY

AD: ARE YOU GOING TO BE REGISTERING THAT VEHICLE IN VERMONT

GW: YES

AD: AND HOW LONG HAVE YOU HAD A VERMONT DRIVER'S LICENSE.

GW: SINCE THE SAME TIME I GOT INSURANCE SINCE JUST BEFORE I WAS GOING TO MOVE TO VERMONT

AD: WHEN DID YOU KNOW YOU WERE GOING TO MOVE TO I KNOW THAT YOU MOVED IN SEPTEMBER 2000

GW: IN LATE AUGUST I KNEW I WAS GOING TO MOVE

AD: AND WHAT DID YOU DO WENT UP THERE AND APPLIED FOR A LICENSE OR WENT THROUGH THE NORMAL COURSE OF EVENTS THAT YOU HAVE TO

GW: YES

AD: WHEN DOES YOUR DRIVER'S LICENSE EXPIRE DO YOU KNOW

GW: I HAVE TO GET IT I JUST HAD IT I DON'T KNOW WHERE I PUT IT OH IT EXPIRES IN 2003

AD: WHAT MONTH

GW: 11/1/2003

AD: OKAY, AND JUST YOU AND YOUR BROTHER ARE IN THE APARTMENT CORRECT

GW: CORRECT

AD: ALL RIGHT, ARE YOU ALSO IN SCHOOL IN VERMONT OR IN CONNECTICUT

GW: NO

AD: OKAY, I THINK I HAVE EVERYTHING THAT I NEED THANKS VERY MUCH FOR YOUR HELP AND AS I SAID IF YOU HEAR ANYTHING FROM THE NAUGATUCK POLICE DEPARTMENT LET ME KNOW AND IN THE MEAN TIME IF I HAVE YOUR PERMISSION I WILL TURN OFF THE RECORDER

GW: OKAY

AD: THE TIME IS APPROXIMATELY 2:20

GW: YES

STATE OF VERMONT
COUNTY OF RUTLAND

| PROGRESSIVE INSURANCE COMPANY, | ) | RUTLAND SUPERIOR COURT |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | DOCKET NO. 48-1-02 Rdcv |
| | ) | |
| GREGORY WASOKA, and | ) | |
| ROBERT CERDEIRA, | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Progressive Insurance Company (Hereinafter, "Progressive") moves for summary judgment pursuant to V.R.C.P. 56, on the grounds that there are no disputed material facts, and judgment is appropriate as a matter of law. In support of its motion, Plaintiff files the following Memorandum and the attached Statement of Undisputed Facts.

## MEMORANDUM

Summary Judgment is appropriate when there are no genuine issues of material fact and he is entitled to judgment as a matter of law, after giving the benefit of all reasonable doubts and inferences to the nonmoving party. V.R.C.P. 56; *Samplid Enterprises, Inc. v. First Vermont Bank*, 165 Vt. 22, 25 (1996); and *Sabia v. Neville*, 165 Vt. 515, 523 (1996).

The present matter is an insurance coverage case where Defendant deliberately breached a policy provision that would have enabled his insurer to investigate the issue of fraud in the inducement of the policy, a legal issue that would void coverage. *Fireman's Fund Ins. Co. v. Knutsen*, 132 Vt. 383 (1974). By this motion, Plaintiff requests judgment from the court that Defendant's breach of contract voids the insurance contract *ab initio*.

On July 23, 2000, Gregory Wasoka purchased an automobile insurance policy from agent Steve Shortle of C.G. McCullough Insurance Agency, Inc., of Killington, Vermont. The automobile insurance policy was a Vermont policy issued by Progressive Insurance Company, to insure Mr. Wasoka's 1999 Ford Ranger. On May 9, 2001, Gregory Wasoka was involved in an automobile/bicycle accident in Connecticut while driving the 1999 Ford Ranger.

Plaintiff informed Progressive of the accident, and Progressive began its investigation of the accident facts. During its investigation of the accident, Progressive became aware of information strongly

suggesting that Mr. Wasoka was a resident of Connecticut at the time he purchased the Vermont automobile insurance policy, prior, and since.

On May 10, 2001, Kathy McIntyre of Progressive, Connecticut, took the first recorded interview of Greg Wasoka. During the recorded interview, which occurred on a Tuesday, Mr. Wasoka was still at his parent's home in Connecticut, near where the accident had occurred. During that recorded interview, Mr. Wasoka stated that the accident in Connecticut occurred on May 9, 2001, while he was on his way to Naugatuck Valley Community College, where he was taking classes. On May 22, 2001, Audra Dyckman of Progressive, Connecticut, took a second recorded interview of Greg Wasoka. During the recorded interview, which occurred on a Wednesday, Mr. Wasoka was still at his parent's home in Connecticut. During the second interview, Mr. Wasoka stated that he was currently working at Gary Industries, a business in Connecticut. Thus, following the second recorded interview, Progressive knew that Mr. Wasoka was working and going to college in Connecticut at the time of the accident.

Soon thereafter, Ms. Dykman, learned that Gary Industries had continually employed Mr. Wasoka for 35 hours per week since 1999, prior to the date Mr. Wasoka purchased the Vermont automobile insurance policy from Progressive, representing himself as a Vermont resident. At deposition in the present matter, which occurred on August 16, 2002, Progressive learned that Mr. Wasoka's parents' Connecticut address was and continues to be where Mr. Wasoka receives all of his mail with the exception of correspondence from Progressive related to his automobile coverage, which was sent to his brother's mailing address in Vermont. Mr. Wasoka's ties with Vermont amounted to a seasonal weekend job at Killington, during which time Mr. Wasoka slept on the living room couch at his brother's condo.

The facts learned by Progressive in the investigation of the automobile accident supported the notion that Mr. Wasoka was in fact a Connecticut resident who represented himself as a Vermont resident in order to obtain favorable insurance rates. These facts go to the issue of fraud in the inducement of the policy; fraud in the inducement of an insurance policy voids coverage *ab initio*. *Fireman's Fund Ins. Co. v. Knutsen*, 132 Vt. 383 (1974). Thus, Progressive had a good faith reason to investigate Mr. Wasoka for fraud in the inducement of the subject insurance policy.

As a result of Progressive's suspicion that Mr. Wasoka lied about his residency in order to obtain favorable rates, Progressive looked to its

insurance contract for investigatory tools. The Progressive automobile insurance policy at issue requires Mr. Wasoka to submit to an examination under oath, and Progressive chose this method to investigate the issue of fraud in the inducement of the policy. The subject motion is based on Mr. Wasoka's breach of policy for failure to submit to an examination under oath, a tool that would have allowed Progressive to further investigate the issue of fraud. The relevant section of the Progressive policy states: "A person claiming coverage under this policy must... allow us to take signed or recorded statements, including statements under oath, and answer all reasonable questions we may ask, when and as often as we may reasonably require."

Although demanded numerous times by Progressive, Mr. Wasoka has still failed to submit to an examination under oath. The request for an examination under oath was made in writing on August 15, 2001, and sent by receipt return mail to Mr. Wasoka's Vermont and Connecticut addresses. It appears that the correspondence sent by Progressive to Mr. Wasoka's purported Vermont address was forwarded by the postal service to Mr. Wasoka's parent's home in Connecticut. Mr. Wasoka received the correspondence sent to Connecticut. In the letter demanding an examination under oath, Progressive informed Mr. Wasoka of the contractual language compelling him to provide an examination under oath. On August 16, 2002, at the deposition in the present matter, Mr. Wasoka acknowledged receiving at least one of the letters demanding an examination under oath. He also acknowledged ignoring it.

Interestingly, and consistent with his failure to submit to an examination under oath, Mr. Wasoka, for over a year, ignored Progressive's request that he sign a bilateral reservation of rights/non-waiver agreement. Reservation of rights/non-waiver agreements must be bilateral under Vermont law. *American Fidelity Co. v. Kerr*, 138 Vt. 363. An executed reservation of rights/non-waiver agreement would allow Progressive to defend Mr. Wasoka in the underlying tort claim while continuing to investigate the issue of fraud in the inducement of the policy.

Thus, the subject motion is based on Mr. Wasoka's breach of contract and failure to cooperate with Progressive's legitimate investigation regarding the issue of his residency. Plaintiff Progressive moves for summary judgment on the grounds that Mr. Wasoka's acknowledged contractual breach — his failure to submit to an examination under oath — voids the insurance contract *ab initio* since an examination under oath is a condition precedent to coverage. Further, Pro-

gressive moves for summary judgment on the grounds that Mr. Wasoka's two breaches of duty, his refusal to submit to an examination under oath and his extended refusal to sign a bilateral reservation of rights/non-waiver agreement must be viewed as admissions of fraud in the inducement of the policy, voiding coverage *ab initio*.

To be clear, this motion is unrelated to Mr. Wasoka's cooperation or failure to cooperate with the underlying *liability claim*.[1] The examination under oath was demanded regarding the issue of *insurance coverage*; the insurer's request and Defendant's failure are not directly related to the accident investigation or defense of the underlying liability claim. The Vermont Supreme Court has stated that prejudice to the underlying *liability case* is required when an insurer looks to void coverage *based on an insured's failure to cooperate with the defense of the liability case. American Fidelity Co. v. Kerr*, 138 Vt. 359, 362 (1980). Progressive is not currently making this claim; thus, that case law is inapplicable to the present matter. Further, the Vermont Supreme Court has not yet distinguished an insured's failure to submit to an examination under oath from general contract and breach of contract law as it did in *Kerr* with regard to an insured's failure to cooperate.

In this case, Mr. Wasoka's breach of contract is his failure to submit to an examination under oath. An examination under oath is a tool typically used by an insurer *to investigate an insured,* and is considered a condition precedent to coverage. *Zaida Valentin v. Premier Insurance Company*, 14 Mass.L.Rptr. 654 (2002). By failing to submit to an examination under oath and failing to sign the non-waiver agreement, Defendant apparently hopes Progressive is forced to simply provide coverage — a defense and indemnity in the underlying tort case. Apparently, he believes ignoring Progressive's legitimate requests will effectuate a positive result for him. A breach of the policy provision requiring an insured to submit to an examination under oath, in this context, will not prejudice the underlying liability claim. Thus, prejudice to the underlying liability case must not be the determining factor regarding whether the breach of this important policy provision voids coverage. To require such would make the policy provision

---

[1] It must be noted that Progressive has not been able to defend Mr. Wasoka in the underlying tort claim, filed in Connecticut, as a result of Mr. Wasoka's failure to execute a reservation of rights/non-waiver agreement. It is unclear to Progressive at this point whether this failure has prejudiced the defense of that matter. Progressive reserves the right to raise this issue in the future.

meaningless, would encourage breach of the provision, and would encourage fraud. For public policy reasons, the court should not sanction Mr. Wasoka's behavior.

The law applicable to the present matter is found in *Fireman's Fund Ins. Co. v. Knutsen, Id.* In *Fireman's Fund,* the Vermont Supreme Court examined the question of whether a material misrepresentation by the insured in the inducement of an automobile insurance policy voids the policy from inception. *Id.*

The Vermont Supreme Court has stated that fraudulent misrepresentation voids insurance coverage *ab initio:*

> It is a general rule of Vermont law that material or fraudulent misrepresentations in applications for life insurance are grounds for declaring the policy void *ab initio.* (Citation omitted). Although we have no decision of this Court applying the above rule to applications for automobile liability insurance, we see no reason why the same principle should not apply, as codified in 8 V.S.A. Sec. 4205, which reads: "The falsity of a statement in the application for a policy covered by such provisions shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

*Id.* at 387-388.

Mr. Wasoka has breached the contractual provision that allows Progressive to investigate the issue of coverage. A breach of this provision, generally considered to be a condition precedent to coverage, logically should void coverage.

The Superior Court of Massachusetts has distinguished a policyholder's breach of the contract provision requiring an examination under oath from the general duty to cooperate. *Commerce Insurance Company v. Angelina Flores,* 11 Mass.L.Rptr. 587, 2000 WL 782006 (Mass.Super.)(2000). In *Flores,* the insured claimed injury in a pedestrian/auto accident, and demanded PIP benefits. When her story lacked consistency, her insurer, Commerce, demanded an examination under oath pursuant to the policy. *Id.* Flores was represented, and her attorney did not allow her to answer questions during the scheduled examination because the insurer would not guarantee coverage following her submission to the examination. The court ruled that while an insured's failure to cooperate requires the insurer to show prejudice before coverage is voided, the "failure to submit [to an

examination under oath] is a material and substantial breach of the policy as a matter of law and excuses Commerce from liability under the policy." *Id.* at 3. Further, courts have held that an insured's submission to a deposition (given during cases such as the present matter) is not equivalent to an examination under oath, and does not fulfill an insured's obligations under the policy. (See *Nationwide Insurance Company v. David B. Nilsen,* 745 So.2d 264 (1999).

The Massachusetts case law as represented in *Flores* is consistent with the law already established in Vermont.

Although insurance policies are viewed on contracts of adhesion, and generally construed against the insurer, the enforcement of this provision does not expose an insured to the risk of an inappropriate penalty. See *Cooperative Fire Insurance Assn. of Vermont v. White Caps, Inc., City of Burlington and David Stancil,* 166 Vt. 355, 360 (1997). The provision that Progressive is looking to enforce is not one that requires the insured to act on his or her own prior to contact with the insurer, such as providing prompt notice of a loss. *Id.* In the case of providing prompt notice, an insured must act alone, without the direction of the insurer. In the case of an insured's failure to provide an examination under oath, there is significant contact between an insurer and an insured before an insurer requests the examination. In other words, unlike the prompt notice provision, an insured is already in contact with the insurer when enforcement of the contract provision is being raised. Thus, the insured has an opportunity to comply.

In *Fireman's Fund,* the Court said that in matters of fraudulent misrepresentation in the inducement of insurance contracts, "positive proof" of intent is unlikely, and that the law allows circumstantial evidence to be considered. *Id.* The Court stated: "Circumstances inconclusive in themselves if separately considered may, by their number and joint operation, be sufficient to constitute conclusive proof in matters involving fraudulent intent. *Id.,* citing *Castle v. Bullard,* 23 How. (64 U.S.) 172, 187 (1859).

It would be consistent for the Vermont Supreme Court to find that an insured's failure to submit to an examination under oath, the tool of an insurer to investigate issues of fraud, should void coverage. In the present matter, Defendant's failure to allow Progressive to investigate the fraud must be viewed as circumstantial evidence of fraud, as well as a clear breach of contract. Thus, Mr. Wasoka's policy should be void *ab initio.*

## STATE OF VERMONT
## COUNTY OF RUTLAND

PROGRESSIVE INSURANCE COMPANY, )    RUTLAND SUPERIOR COURT
    Plaintiff, )
          )
    v. )    DOCKET NO. 48-1-02 Rdcv
          )
GREGORY WASOKA, and )
ROBERT CERDEIRA, )
    Defendants. )

## UNDISPUTED FACTS

1. On July 23, 2000, Gregory Wasoka purchased an automobile insurance policy from agent Steve Shortle of C.G. McCullough Insurance Agency, Inc., of Killington, Vermont. (Complaint/Wasoka Answer at 4)(Exhibits 1 & 2)

2. The automobile insurance policy was a Vermont policy issued by Progressive Insurance Company, to insure Mr. Wasoka's 1999 Ford Ranger (Hereinafter, "Insurance Policy"). (Complaint/Wasoka Answer at 4)(Exhibits 1 & 2)

3. On May 9, 2001, Gregory Wasoka was involved in an automobile/bicycle accident in Connecticut while driving the 1999 Ford Ranger. (Complaint/Wasoka Answer at 7)(Exhibits 1 & 2)

4. The day of the accident, May 9, 2001, was a Monday. (Calendar attached; Plaintiff requests that the court take judicial notice of this fact). (Exhibit 3)

5. On May 10, 2001, Kathy McIntyre of Progressive, Connecticut, took a recorded interview of Greg Wasoka. (Recorded Interview I, at 1). (Exhibit 4)

6. During the recorded interview, which occurred on a Thursday, Mr. Wasoka was still at his parent's home in Connecticut. (Recorded Interview I, at 1). (Exhibit 4)

7. During that recorded interview, Mr. Wasoka stated that the accident in Connecticut occurred on May 9, 2001, while he was on his way to Naugatuck Valley Community College, where he was taking classes.

8. On May 22, 2001, Audra Dyckman of Progressive, Connecticut, took a second recorded interview of Greg Wasoka. (Recorded Interview II at 1). (Exhibit 5)

9. During the recorded interview, which occurred on a Wednesday, Mr. Wasoka was still at his parent's home in Connecticut. (Recorded Interview II at 1). (Exhibit 5)

10. During the interview, Mr. Wasoka stated that he was currently working at Gary Industries, a business in Connecticut. (Recorded Interview II at 2). (Exhibit 5)

11. The Connecticut address was and continues to be where Mr. Wasoka received his mail other than the bills for the subject insurance (Deposition at 60). (Exhibit 6)

12. Following the second recorded interview, Progressive had reason to believe that Mr. Wasoka was a Connecticut resident when he purchased the Vermont automobile insurance policy. Progressive suspected fraud in the inducement of the policy.

13. The subject Progressive automobile insurance policy requires Mr. Wasoka to submit to an examination under oath if requested by Progressive.

14. Progressive requested that Mr. Wasoka submit to a statement under oath through correspondence dated August 15, 2001. (Exhibit 7)

15. At deposition, Mr. Wasoka acknowledged receiving at least one letter from Progressive requesting that he submit to an examination under oath. Mr. Wasoka acknowledged ignoring Progressive's requests for an examination under oath.

16. Because fraud in the inducement of an insurance policy may void coverage, and because Mr. Wasoka failed to submit to the requested examination under oath, Progressive sought to properly reserve it's rights under Vermont law by having Mr. Wasoka sign a bilateral reservation of rights/nonwaiver agreement. (Exhibit 8)

17. Mr. Wasoka has failed to cooperate with the legitimate contract provisions afforded Progressive, which allow Progressive to investigate Mr. Wasoka himself.

18. The applicable provision of the Progressive insurance policy reads: "A person claiming coverage under this policy must... allow us to take signed or recorded statements, including statements under oath, and answer all reasonable questions we may ask, when and as often as we may reasonably require."